**Ricky Ranay Hurt**
NAME
**E-49953                    C-7.209½**
PRISON IDENTIFICATION / BOOKING NUMBER
**PO Box 1050    Salinas Valley State prison**
ADDRESS OR PLACE OF CONFINEMENT
**Soledad, California    93960-1050.**

NOTE:    It is your responsibility to notify the Clerk of Court in writing of any change of address. If represented by an attorney, provide his name, address and telephone number.

FILED

530

## UNITED STATES DISTRICT COURT
**Northern** ~~CENTRAL~~ DISTRICT OF CALIFORNIA                    **SBA**

**Ricky Ranay Hurt**
FULL NAME
*(Include name under which you were convicted)*

                                **Petitioner,**

v.

CASE NUMBER:
**CV _08 _2416**
To be supplied by the Clerk of the United States District Court.

**(PR)**

PETITION FOR WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY
28 U.S.C. § 2254

PLACE/COUNTY OF CONVICTION **LA. Sup. Van Nuys. (Dept "O")**
PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
*(List by case number)*

**M.S. Evans, Warden    S.V.S.P.**
NAME OF WARDEN, SUPERINTENDENT, JAILOR OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER

                                **Respondent.**

CV- **99-03934  — ABC (AJJ).**
CV- _____
CV- _____

(If petitioner is attacking a judgment which imposed a sentence to be served in the *future*, petitioner must fill in the name of the state where the judgment was entered. If petitioner has a sentence to be served in the *future* under a federal judgment which he wishes to attack, he should file a motion under 28 U.S.C. §2255, in the federal court which entered the judgment.)

## INSTRUCTIONS - READ CAREFULLY

This petition shall be legibly handwritten or typewritten, and signed by the petitioner, under penalty of perjury. You must set forth CONCISELY the answer to each question in the proper space on the form. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury.

You must not attach separate pages to this petition, except that ONE separate additional page is permitted in answering Question No. 10.

Upon receipt of a fee of $5.00 your petition will be filed if it is in proper order.

If you are seeking leave to proceed in forma pauperis (without paying the $5.00 filing fee and other court costs), then you must also complete and execute the declaration on the last two pages, setting forth information which establishes your inability to pay the fees and costs of the proceedings or to give security therefor. If you wish to proceed in forma pauperis, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution. If your prison account exceeds $25.00, you must pay the filing fee as required by the rule of the district court.

When the petition is completed, the original and two copies must be mailed to the Clerk of the United States District Court for the Central District of California, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012, ATTN: Intake/Docket Section.

A single petition should be used to challenge a particular State Court judgment of conviction and/or sentence.

Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.

PLEASE COMPLETE THE FOLLOWING: *(Check appropriate number)*

This petition concerns:

1. ☒ A conviction.
2. ☒ A sentence.
3. ☐ Prison discipline.
4. ☐ A parole problem.
5. ☐ Other.

## PETITION

1. Venue

   (a) Place of detention  *salinas valley state prison.*

   (b) Place of conviction *Los Angeles county superior court, vannuys N.W (Dept "0").*

   (c) Place sentenced  *6230 sylmar, vannuys california 91401.*

2. Conviction on which the petition is based *(a separate petition must be filed for each conviction being attacked).*

   (a) Nature of offenses involved *(include all counts):* *circumstantial second degree "robbery" (Three counts.) Two allegation counts of an alleged firearm, (Plus two prior plea bargain convictions).*

   (b) Penal or other code section or sections: *212, 12022.5 subd(a) Sec 667 subds. (a) Through (i).*

   (c) Case number: *MA009853.*

   (d) Date of conviction: *9-25-95.*

   (e) Date of sentence: *12-05-95.*

   (f) Length of sentence on each count: *I received 81 YRS to life imprisonment with the possibility of parole.*

   (g) Plea *(check one)*

   ☒ Not guilty
   ☐ Guilty
   ☐ Nolo Contendere

   (h) Kind of trial: *(check one)*

   ☒ Jury
   ☐ Judge only
   ☐ Judge alone on transcript

   (i) Did you testify at the trial?

   ☐ Yes   ☒ No

---

3. Did you appeal from the conviction of sentence?

☒ Yes    ☐ No

4. If you did appeal, give the following information for each appeal:

(a) (1) Name of court: Second Appellate District (Division one).

(2) Result: Remanded Back To Court.

_____

(3) Date of result: 10-15-96.

(4) Citation or number of opinion: B0098667.

(5) Grounds raised (list each):

(a) A remand pursuant to people v. superior court (Romero).

(b) Resentence appellate with accurate view of its power and sentencing discretion.

(c) SEE ("people v. Fritz, supra 40," supra 96). C.D.O.S. P. 50 89.

(d) _____

(e) _____

(f) _____

(g) _____

(b) (1) Name of court: U.S. District Court (Central District).

(2) Result: It Was Therefore Granted.

_____

(3) Date of result: April 16, 1996.

(4) Citation or number of opinion: CV 99-03934 ABC (AIJ).

(5) Grounds raised (list each):

(a) I NEEDED More Time For Research, so I could Press all of my

(b) Inquiries, to Raise" Proper Issues.

(c) _____

(d) _____

(e) _____

(f) _____

(g) _____

5. If you did not appeal:

(a) State your reasons _____

_____

_____

_____

(b) Did you seek permission to file a late appeal?

☒ Yes    ☐ No

6. Other than a direct appeal, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?

☒ Yes    ☐ No

7. If you answer to 6 was "Yes", give the following information:

(a) (1) Name of court: **california supreme courT.**

(2) Nature of proceeding: **A remand pursuant to people v. Superior court (Romero 1996)**

(3) Grounds raised: **A clerical correction of abstrict of judgment, in addition to a clerical correction of minute order.**

(4) Result: **Denied.**

(5) Date of result: **Aug 25, 1999.**

(6) Citation or number of any written opinions or orders entered pursuant to each such disposition.

**S073801.**

(b) (1) Name of court: **california supreme courT.**

(2) Nature of proceeding: **A petition for writ of Habeas corpus. SEE ADDENDUM, Pages 1-22. SEE Application to strike Priors, Pages 1-16. SEE Attached Joinder Motion, Pages 1-14.**

(3) Grounds raised:    "    "    "

(4) Result: **Denied.**
**SEE Exh-A. In re waltreus Also SEE Exh-A. In re Duvall.**

(5) Date of result: **April 6, 2007.**

(6) Citation or number of any written opinions or orders entered pursuant to each such disposition.

**S151576.**

(c) (1) Name of court: _____

(2) Nature of proceeding: _____

(3) Grounds raised: _____

(4) Result: _____

(5) Date of result: _____

(6) Citation or number of any written opinions or orders entered pursuant to each such disposition.

8.  Was an evidentiary hearing held?

☐ Yes    ☒ No

If so, state the name of the court, and the result: _____

_____

_____

9.  If your answer to 6 was "No", explain briefly why you did not seek post-conviction relief in the state courts.

_____

_____

_____

_____

CAUTION:  *Exhaustion Requirement:*  In order to proceed in federal court, you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court.  This means that even if you have exhausted as to some grounds, you must first present all other grounds to the state court.

10. State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground.  If necessary, attach a SINGLE page only behind this page.

CAUTION:  If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date. You must state facts, not conclusions, in support of your grounds. (e.g., if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do). A rule of thumb is - who did exactly what to violate your rights at what time or place.

(a) Ground one: **SEE ATTACHED ADDENDUM PETITION FOR WRIT OF HABEAS CORPUS, PAGES 1-Thru-22.**

_____

Supporting FACTS (tell your story BRIEFLY without citing cases or law):
**SEE APPLICATION TO STRIKE PRIOR CONVICTIONS, PAGES 1-Thru-16. ALSO SEE ATTACHED JOINDER MOTION, PAGES 1-Thru-14. ALL MADE A PART OF THIS PETITION BY THIS REFERENCE AS THOUGHFULLY SET FORTH. ALSO SEE MOTION FOR RESENTENCING.**

_____

(b) Ground two: **SEE ATTACHED ADDENDUM PETITION FOR WRIT OF HABEAS CORPUS, PAGES 1-Thru-22.**

_____

Supporting FACTS (tell your story BRIEFLY without citing cases or law): **SEE APPLICATION TO STRIKE PRIOR CONVICTIONS, PAGES 1-Thru-16. ALSO SEE ATTACHED JOINDER MOTION, PAGES 1-Thru-14. ALL MADE A PART OF THIS PETITION BY THIS REFERENCE AS THOUGHFULLY SET FORTH. ALSO SEE MOTION FOR RESENTENCING.**

(c)  Ground three: _____

_____

Supporting FACTS (tell your story BRIEFLY without citing cases or law): _____

_____

_____

_____

_____

_____

_____


(d)  Ground four: _____

_____

Supporting FACTS (tell your story BRIEFLY without citing cases or law): _____

_____

_____

_____

_____

_____


11.  If any of the grounds listed in 10 were not previously presented to this court or any other court, state briefly which grounds were not presented, and give your reasons: _____

_____

_____

_____


12.  Do you have any petition, appeal or parole matter pending in any court, either state or federal as to the judgment of conviction under attack?

☐ Yes   ☒ No

13.  Are you presently represented by counsel?

☐ Yes   ☒ No

If so, provide name, address and telephone number: _____

_____

_____

Case name and court: _____

_____

_____

---

WHEREFORE, petitioner prays that the court grant petitioner relief to which he may be entitled in this proceeding.

_____
                                                    Signature of Attorney (if any)

I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.  Executed on

_____
              Date

                                *Ricky R, Hunt.*
                                                    Signature of Petitioner

# PRAYER

## THE COURT IS MOVED TO ORDER THE FOLLOWING:

1. ORDER SUMMARY JUDGEMENT AS MOVED STRIKING STRIKES AS VIOLATIVE OF DUE PROCESS AS MANDATED BY 'NEW LAW';

2. REMAND CASE FOR EVIDENTIARY HEARING TO RESOLVE 'MATERIAL DISPUTED FACTS' TARGETING THE FOLLOWING:

ALLEGED STRIKES WERE NOT A CRIME AGAINST A PERSON OR INVOLVED VIOLENCE ;

3. ORDER 'REFEREE APPOINTMENT' FOR RECOMMENDATION/ FINDINGS PRESENTATION TO THE COURTS RESPECTIVE OF THE TARGETED GROUND;

4. ORDER 'ATTORNEY APPOINTMENT' FOR INDIGENT DEFENDANT TO PROTECT HIS DUE PROCESS RIGHTS THROUGHOUT THESE PROCEEDINGS';

5. ORDER, 'ORDER TO SHOW CAUSE' TO RESPONDENT; • THE COURT IS MOVED TO GRANT ALL OTHER APPROPRIATE JUSTICE RELIEF REMEDY WITH REQUISITE ORDERS ISSUED TO RESPECTIVE PARTIES IN THE INTEREST OF JUDICIAL ECONOMY, LAW AND JUSTICE.

DATED. 5-06-08.                    ___Ricky R. Hurt.___

Citation/Title
399 F.3d 964, Reyes v. Brown, (C.A.9 (Cal.) 2005)

*964  399 F.3d 964

5 Cal. Daily Op. Serv. 1910, 2005 Daily Journal D.A.R. 2657

United States Court of Appeals,
Ninth Circuit.

Santos L. REYES, Petitioner-Appellant,

v.

Jill BROWN, (FN*) Warden, Respondent-Appellee.

No. 00-57130.
Argued and Submitted March 7, 2002.

Submission Withdrawn April 2, 2002.

Resubmitted April 17, 2003.

Filed March 4, 2005. (FN**)

**Background:** State prisoner convicted for perjury on his driver's license application and sentenced to serve 26 years to life under California's three strikes law filed petition for federal writ of habeas corpus. The United States District Court for the Central District of California, Virginia Anne Phillips, J., denied petition. Prisoner appealed.

**Holding:** The Court of Appeals, Pregerson, Circuit Judge, held that remand was required for determination of whether petitioner's prior armed robbery offense was a crime against a person or involved violence, and thus justified his extreme sentence for perjury.

Vacated and remanded.

Tallman, Circuit Judge, filed dissenting opinion.

Opinion 83 Fed.Appx. 985 superseded.

West Headnotes

© 2005 Thomson/West. No claim to original U.S. Govt. works.

399 F.3d 964, Reyes v. Brown, (C.A.9 (Cal.) 2005)

[1]   Habeas Corpus ⬳842

    197 ----
        197III Jurisdiction, Proceedings, and Relief
         197III(D) Review
          197III(D)2 Scope and Standards of Review
           197k842 Review De Novo.

  Court of Appeals reviews de novo a district court's decision to grant or deny a habeas petition. 28 U.S.C.A. § 2254.

[2]   Habeas Corpus ⬳452

    197 ----
        197II Grounds for Relief;  Illegality of Restraint
         197II(A) Ground and Nature of Restraint
          197k450 Federal Review of State or Territorial Cases
           197k452 Federal or Constitutional Questions.

  A state court's decision is contrary to clearly established federal law, and thus can be grounds for federal habeas corpus relief, if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. 28 U.S.C.A. § 2254(d).

[3]   Habeas Corpus ⬳450.1

    197 ----
        197II Grounds for Relief;  Illegality of Restraint
         197II(A) Ground and Nature of Restraint
          197k450 Federal Review of State or Territorial Cases
           197k450.1 In General.

  A state court's decision is an unreasonable application of clearly established federal law, and thus can be grounds for federal habeas corpus relief, if the state court identifies the correct governing legal principle from Supreme Court decisions but unreasonably applies that principle to the facts of the prisoner's case. 28 U.S.C.A. § 2254(d).

[4]   Habeas Corpus ⬳864(5)

    197 ----
        197III Jurisdiction, Proceedings, and Relief
        197III(D) Review
         197III(D)3 Determination and Disposition
          197k862 Remand
           197k864 Criminal Cases
            197k864(5) Sentence and Punishment.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

399 F.3d 964, Reyes v. Brown, (C.A.9 (Cal.) 2005)

Remand was required in case of habeas corpus petitioner sentenced to term of 26 years to life for perjury under California's three strikes law for determination of whether petitioner's prior armed robbery offense was a crime against a person or involved violence, and thus justified his extreme sentence for perjury; neither perjury offense of falsifying driver's license application nor petitioner's other prior conviction as juvenile for apparently nonviolent residential burglary threatened grave harm to society for purposes of justifying extreme sentence. 28 U.S.C.A. § 2254.

*965 Gretchen Fusilier, Carlsbad, CA, for the petitioner-appellant.

David Delgado-Rucci, Deputy Attorney General, San Diego, CA, for the respondent-appellee.

Appeal from the United States District Court for the Central District of California; Virginia A. Phillips, District Judge, Presiding. D.C. No. CV-00-00608-VAP.

Before: PREGERSON, FISHER and TALLMAN, Circuit Judges.

PREGERSON, Circuit Judge:

California state prisoner Santos L. Reyes brought this 28 U.S.C. § 2254 habeas action challenging his sentence under California's "Three Strikes" law. Reyes was convicted of perjury for making misrepresentations on a California Department of Motor Vehicles ("DMV") driver's license application. The perjury conviction was Reyes' third strike. He was sentenced to twenty-six years to life. Reyes contends that his punishment violates the Eighth Amendment's prohibition on cruel and unusual punishment. The district court denied Reyes' habeas petition. Because we conclude that the facts necessary to evaluate Reyes' petition were not sufficiently developed before the district court--and, therefore, are not sufficiently developed in the record before us--we vacate the district court's denial of Reyes' petition and remand to the district court for further proceedings.

I.

On September 18, 1997, Reyes entered the DMV on Waterman Avenue in San Bernardino, California. He purportedly filled out an application for a driver's license under the name of his cousin, Miguel Soto, who purportedly knew how to drive but not how to read. Reyes signed the application, which purportedly stated that the information was being provided under penalty of perjury. (FN1) After Reyes signed the application, DMV employee Debra Alexander gave Reyes two copies of the written driver's license test. Alexander suspected that Reyes was cheating on the exam by using a "crib sheet." She confiscated the two tests from Reyes and began filling out paperwork related to Reyes' alleged cheating. Meanwhile, Reyes left the DMV building.

Alexander contacted California Highway Patrol Officer José Lopez, who was

© 2005 Thomson/West. No claim to original U.S. Govt. works.

stationed *966    at the DMV. Officer Lopez followed Reyes, who was walking away. After catching up with Reyes, Officer Lopez patted-down Reyes and handcuffed him.   Reyes cooperated with Officer Lopez and voluntarily admitted that he had attempted to take the written driver's license test for Soto.   The encounter was without violence.

On March 2, 1998, Reyes was arraigned on an Amended Information, charging him with one count of perjury in violation of California Penal Code § 118.   Reyes qualified for the Three Strikes enhancement because of two prior convictions: one as a juvenile in 1981 for residential burglary in violation of California Penal Code § 459;   and one in 1987 for armed robbery in violation of California Penal Code § 211.

The State offered Reyes a deal of four years imprisonment in exchange for a guilty plea to the perjury charge, but Reyes rejected the plea deal and exercised his constitutional right to a jury trial.   On March 5, 1998, a jury convicted Reyes of the perjury charge and found the Three Strikes special allegations true.   On April 2, 1998, the trial court sentenced Reyes to an indeterminate term of twenty-six years to life.

Reyes appealed the judgment, claiming, among other things, that his sentence violated the Eighth Amendment's prohibition on cruel and unusual punishment.   On June 9, 1999, the California Court of Appeal affirmed Reyes' conviction and sentence.   On September 1, 1999, the California Supreme Court denied Reyes' petition for review.

On July 26, 2000, Reyes filed a 28 U.S.C. § 2254 habeas petition in the United States District Court for the Central District of California.   On September 21, 2000, Magistrate Judge Charles F. Eick issued a report and recommendation urging that Reyes' petition be dismissed with prejudice.   On October 12, 2000, District Judge Virginia Phillips adopted the report and recommendation and dismissed Reyes' petition.

On October 31, 2000, Reyes timely filed a notice of appeal and a request for certificate of appealability.   On May 2, 2001, we granted Reyes a certificate of appealability on the limited issue whether his Three Strikes sentence violated the Eighth Amendment.   (FN2)

II.

[1] [2] [3] We review *de novo* a district court's decision to grant or deny a 28 U.S.C. § 2254 habeas petition.   *See Rios v. Garcia*, 390 F.3d 1082, 1084 (9th Cir.2004).   The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub L. No. 104-132, 110 Stat. 1214, govern Reyes' habeas petition.   Under AEDPA, habeas relief is proper if the state court's adjudication of the merits of the habeas claim resulted in a decision that was " 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' "   *Rios*, 390 F.3d at 1084 (quoting 28 U.S.C. § 2254(d)).   "A state court's decision is

© 2005 Thomson/West. No claim to original U.S. Govt. works.

399 F.3d 964, Reyes v. Brown, (C.A.9 (Cal.) 2005)

'contrary to' clearly established federal law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases[,]' or (2) 'confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision and nevertheless arrives at a [different] result.' " *Id.* (quoting *Williams v. Taylor,* 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). "A state court's decision is an **\*967** unreasonable application of clearly established federal law if 'the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case.' " *Id.* (quoting *Williams,* 529 U.S. at 413, 120 S.Ct. 1495).

III.

[4] Applying AEDPA in *Ramirez v. Castro,* 365 F.3d 755 (9th Cir.2004), we recognized that Eighth Amendment challenges to Three Strikes sentences remain viable in certain "exceedingly rare" cases. *Id.* at 756, 770; *see also id.* at 763 (noting that the Eighth Amendment's " 'proportionality principle' ... is applicable 'only in the "exceedingly rare" and "extreme" case' " (quoting *Lockyer v. Andrade,* 538 U.S. 63, 72-73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) )). (FN3) We applied the Supreme Court's analysis in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), to examine as an initial matter "whether [the petitioner's] extreme sentence is justified by the gravity of his most recent offense and criminal history." *Ramirez,* 365 F.3d at 768 (holding that this inquiry gives rise to an inference of gross disproportionality, which then calls for intrajurisdictional and interjurisdictional analyses).

We concluded that Ramirez' sentence did not match the gravity of the triggering offense, given that his most recent offense consisted of the nonviolent shoplifting of a VCR. *See id.* Our reasoning that Ramirez' conduct did not "threaten[ ] ... grave harm to society" applies here, *id.* (quoting *Harmelin v. Michigan,* 501 U.S. 957, 1003, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring)), where Reyes' act of falsifying a driver's license application was not a crime targeted at another individual. (FN4)

We next considered Ramirez' criminal history to determine whether the extreme sentence matched his prior offenses. *See id.* at 768-769. Ramirez had been twice convicted of "second-degree robbery, i.e., willfully and unlawfully taking personal property 'by means of force and fear' in violation of California Penal Code §§ 211, 212.5(c), and 213(a)(2), a 'serious felony' under § 1192.7(c)(19)." *Id.* at 757. The first strike involved shoplifting from a grocery store, after which a get-away car driven by a third person ran over the store security guard's foot. *See id.* at 757, 768. In the second offense, Ramirez pushed a security guard away with his open hand as **\*968** he ran out of K-Mart with stolen goods. *See id.* at 757, 768. Ramirez was found to have committed these offenses with "force" and was prosecuted for and convicted of "second-degree robbery," as opposed to "petty theft" (Cal.Penal Code §§ 484, 488) or "second-degree commercial robbery" (Cal.Penal Code §§ 459-61) because of the physical contact with the security guards. *Id.* at 768. Ramirez served very little time in prison for these two offenses. *See id.* at 769.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

399 F.3d 964, Reyes v. Brown, (C.A.9 (Cal.) 2005)

In the instant case, Reyes earned his first strike for residential burglary, in violation of California Penal Code § 459, when he was seventeen years old. He was sentenced to two years at the California Youth Authority and was paroled after one year. Reyes' age and the fact that the offense appeared to be nonviolent (FN5)--for which he was only required to serve two years at California Youth Authority--weigh against finding this to be a "grave" offense sufficient to justify his twenty-six years to life sentence.

The sticking point in this case comes from Reyes' 1987 conviction for armed robbery in violation of California Penal Code § 211. He was sentenced to nine years of which he served five. (FN6) The record does not reveal the circumstances under which this felony was committed. (FN7) This *969 conviction represents a point of departure from *Ramirez,* given the nature of the offense and the nine-year prison term to which Reyes was sentenced.

However, in *Ramirez,* even though the defendant was convicted of two "serious felonies," we considered the factual specifics of Ramirez' conduct. *Ramirez,* 365 F.3d at 767 (looking past the definitions of the crimes of which Ramirez was convicted to determine whether Ramirez' conduct involved violence or was particularly serious). Although Ramirez was twice convicted of robbery "by force," we minimized the gravity of the offenses by noting that in the first strike offense a third person had run over the security guard's foot, resulting in a "minor injury." *Id.* And in the second strike offense, Ramirez pushed away the security guard with his hand on his way out the door. *See id.*

In *Solem,* the Supreme Court found an Eighth Amendment violation where the habeas petitioner was sentenced to life without parole for "uttering" a false check under a recidivist statute. 463 U.S. at 279-80, 103 S.Ct. 3001. He had a history of *six* nonviolent felonies, including three separate third-degree burglaries, obtaining money under false pretenses, grand larceny, and driving while intoxicated. *See id.* In considering the gravity of his offenses, the Court noted that "nonviolent crimes are less serious than crimes marked by violence or the threat of violence." *Id.* at 292-93, 103 S.Ct. 3001. The Court concluded that "his prior offenses, although classified as felonies, were all relatively minor. *All were nonviolent and none was a crime against a person.*" *Id.* at 296-97, 103 S.Ct. 3001 (emphasis added). (FN8)

In the instant case, but for Reyes' armed robbery conviction, Reyes would appear to have a plausible case for relief under *Ramirez.* (FN9) Unfortunately, the circumstances under which Reyes committed the robbery are not sufficiently developed in the record for us to determine whether the offense was a "crime against a person" or involved violence. Moreover, given that Reyes' first strike was earned as a juvenile, the gravity of his offenses in total rests heavily on his 1987 armed robbery conviction. More facts, such as those on which we relied in *Ramirez,* would help determine the true weight of the offense beyond the label of the crime ("armed robbery") of which Reyes was convicted. Accordingly, we vacate the district court's denial of Reyes' habeas petition and remand *970  for the district court to develop the record further and to determine in the first instance whether Reyes is entitled to relief under

© 2005 Thomson/West. No claim to original U.S. Govt. works.

399 F.3d 964, Reyes v. Brown, (C.A.9 (Cal.) 2005)

*Ramirez.*

The panel shall retain jurisdiction over this matter.

VACATED and REMANDED.

TALLMAN, Circuit Judge, dissenting:

In *Ewing* and *Andrade,* the United States Supreme Court found that California Three Strikes sentences at issue did not violate the Eighth Amendment prohibition on cruel and unusual punishment. *Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), *Ewing v. California,* 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003). In its opinions, the Court allowed for the remote possibility of finding a statutory punishment unconstitutional when it is "grossly disproportionate." *Andrade,* 538 U.S. at 73, 123 S.Ct. 1166; *see also Ewing,* 538 U.S. at 23, 123 S.Ct. 1179 (noting that the Eighth Amendment contains a narrow "proportionality principle that applies to noncapital sentences") (internal quotations and citations omitted). The Court did not elaborate what types of violations this exception might encompass, but warned that "it is applicable 'only in the exceedingly rare and extreme case.' " *Ramirez v. Castro,* 365 F.3d 755, 763 (9th Cir.2004) (discussing *Andrade,* 538 U.S. at 72-73, 123 S.Ct. 1166). This is not one of them.

After the Court's decisions in *Ewing* and *Andrade,* the Ninth Circuit quickly found such an exceedingly rare case in *Ramirez.* Although *Ramirez* is now the law of the circuit for habeas challenges to Three Strikes sentences, its analysis is less than ideal. The *Ramirez* opinion sets forth what is, at best, a nebulous balancing test for analyzing whether a lengthy Three Strikes sentence violates the proportionality principle: whether the sentence is "justified by the gravity of [the petitioner's] most recent offense and criminal history." *Ramirez,* 365 F.3d at 768; *see also Ewing,* 538 U.S. at 29, 123 S.Ct. 1179 (noting that, when considering the gravity of the offense, the court "must place on the scales not only his current felony," but also his criminal history).

In determining the gravity of the triggering offense and criminal history, *Ramirez* instructs courts to examine the "core conduct" of the crimes and consider: (1) whether the crime involved the use of force; (2) whether weapons were present; (FN1) (3) whether the crime was violent in nature; and (4) the length and type of sentence imposed. *See Ramirez,* 365 F.3d at 768-69 (discussing the factors of Ramirez's triggering offense and criminal history *971 that were relevant in determining whether the sentence was justified). (FN2)

The court here declares that *Reyes* potentially presents another one of these *exceptionally* rare cases, and that an evidentiary hearing is required in order to determine whether Reyes' punishment violated the proportionality principle. Based on Supreme Court and Ninth Circuit precedent, I disagree with both of these propositions. However much individual judges chafe at the Supreme Court's decisions in *Ewing* and *Andrade* or the electorate's continuing and clear

© 2005 Thomson/West. No claim to original U.S. Govt. works.

399 F.3d 964, Reyes v. Brown, (C.A.9 (Cal.) 2005)

expression of support for tough treatment of repeat offenders, our obligation is to apply the law which the Supreme Court upheld in *Andrade* and *Ewing*.

Reyes does not present an "extraordinary" rare case; he is a career criminal. Between 1981 and 1997, he committed six crimes and spent almost seven years behind bars, five of which were passed in state prison. His criminal history reflects the very type and degree of recidivism the Supreme Court recognizes Three Strikes laws were properly intended to address. *Rummel v. Estelle*, 445 U.S. 263, 284-85, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (rejecting an Eighth Amendment challenge to Texas' recidivist statute). Furthermore, even if a narrow class of cases exist that might constitute an unusual exception, Ramirez's criminal history pales in comparison to Reyes' sixteen years of on-again, off-again criminality. I would not characterize the nature of Reyes' prior convictions as charitably as does the majority, particularly where Reyes has been convicted of battery, armed robbery, and driving while under the influence, all of which pose a potential of seriously injuring other people.

There is no need for an evidentiary hearing. While the *Ramirez* balancing test is admittedly vague, at least two of the four factors that the *Ramirez* court considered relevant weigh heavily in favor of finding Reyes' sentence justified. First, Reyes was convicted of *armed* robbery; contrary to the panel majority's inferences, this strike certainly involves at least the *presence* of a weapon during the commission of a violent crime. Second, Reyes served five years of a nine-year state prison sentence for his armed robbery conviction. Not only is this a lengthy sentence, but *Ramirez* explicitly noted that a critical consideration in determining whether a sentence is proportionate is whether the petitioner has ever "been sentenced to [or] served any time in *state prison* prior to committing" the triggering offense. *Ramirez*, 365 F.3d at 769 (emphasis added). These facts strongly distinguish Reyes' case from *Ramirez* and justify the Three Strikes sentence imposed.

It is unclear what sorts of facts the court here anticipates will be revealed during the evidentiary hearing, or what difference they will make in the proportionality inquiry. It is also unclear what facts the district court on habeas review is permitted to revisit in its "core conduct" inquiry in the face of a final state criminal judgment that Reyes committed a robbery while armed. Because *Ramirez* sets forth a balancing test, the district court must simply determine that, in consideration of the four factors, and particularly his pattern of continuing criminal behavior, Reyes' prior time spent in state prison and his earlier conviction for armed robbery render his Three Strikes sentence for perjury justified under controlling Supreme Court precedent. There is no need for an evidentiary *972. hearing to reach that conclusion on the record already before us.

I would deny Reyes' petition for rehearing and petition for rehearing en banc. Accordingly, I **DISSENT** from this futile remand.

(FN*) Jill Brown is substituted for J.S. Woodford, her predecessor as Warden of San Quentin State Prison. *See* Fed. R.App. P. 43(c)(2).

© 2005 Thomson/West. No claim to original U.S. Govt. works.

399 F.3d 964, Reyes v. Brown, (C.A.9 (Cal.) 2005)

(FN**) This case was originally the subject of a memorandum disposition filed December 29, 2003. *See Reyes v. Woodford*, 83 Fed. Appx. 985 (9th Cir.2003). On January 12, 2004, Reyes filed a petition for panel rehearing and rehearing en banc. In an order filed contemporaneously with this opinion, we grant the petition for panel rehearing; withdraw the December 29, 2003, memorandum disposition; and deny the petition for rehearing en banc as moot.

(FN1.) The parties dispute whether the application Reyes signed was in English or Spanish and whether it stated that the information being provided was under penalty of perjury. For example, the State maintains that Reyes "filled out an English language application .... which stated the information was being provided under penalty of perjury." *See* Appellee's Br. at 4-5, *available at* 2001 WL 34355184. In contrast, Reyes maintains that the application "was in Spanish," that he "did not know that he was signing under penalty of perjury," that he "did not know what 'perjury' meant," and that "nothing on" the Spanish application says " 'I have read and understood the above.' " *See* Appellant's Opening Br. at 5-6, 8, *available at* 2001 WL 34355185. We need not resolve this dispute because it is not germane to our resolution of the instant appeal.

(FN2.) Reyes subsequently filed two requests to broaden the certificate of appealability. We deny those requests in a separate unpublished order filed contemporaneously with this opinion.

(FN3.) We note that the California Attorney General declined to seek further review of our decision in *Ramirez*, stating that he was acting in "the interest of justice" and calling *Ramirez* an "exceedingly rare case." Henry Weinstein, *Lockyer Gives Up Three-Strikes Case*, L.A. TIMES, Apr. 30, 2004, at B6, *available at* 2004 WL 55909787.

(FN4.) Signing someone else's name on a driver's license application is specifically proscribed by the California legislature as a misdemeanor. *See* Cal. Veh.Code § 20 ("It is unlawful to use a false or fictitious name, or to knowingly conceal any material fact in any document filed with the [DMV]."); *id.* § 40000.5 (classifying a Vehicle Code § 20 violation as a misdemeanor). The offense does not, however, preclude prosecution of the defendant under Penal Code § 118 for felony perjury, instead of the misdemeanor Vehicle Code section that more accurately proscribed Reyes' conduct, *see People v. Molina*, 5 Cal.App.4th 221, 231, 6 Cal.Rptr.2d 736 (1992) (holding that "Vehicle Code section 20 does not preclude perjury prosecutions for those filing false license applications under oath at the DMV"), and in this case, Reyes was convicted after trial of felony perjury. The fact that the California legislature deemed making false statements on a driver's license application to be a misdemeanor reflects that Reyes' offense "is viewed by society as among the less serious offenses." *Solem*, 463 U.S. at 296, 103 S.Ct. 3001 (internal quotations omitted).

(FN5.) The little detail in the record suggests that Reyes was "at some guy's house with some friends and ... walked out with a radio that didn't belong to"

© 2005 Thomson/West. No claim to original U.S. Govt. works.

399 F.3d 964, Reyes v. Brown, (C.A.9 (Cal.) 2005)

him.  3/4/98 Trial Tr. at 120:8-9.

(FN6.) Reyes also has a history of "non-strike" offenses including petty theft; being under the influence of a controlled substance; misdemeanor DUI; and misdemeanor battery.  None of these offenses appear to have involved violence, and unlike the criminal histories of the defendant in *Ewing v. California*, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003), and the petitioner in *Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144, Reyes' criminal history became indisputably less serious over time, *see Ramirez*, 365 F.3d at 765-767 (describing Ewing's and Andrade's criminal histories).

*972_   (FN7.) The paucity of detail in the record indicates that this offense may have been non-violent.  *Compare* 3/4/98 Trial Tr. at 120:17-24 (suggesting that Reyes "was stealing"--"not robbing" but "had a knife" on his person), *with Rios*, 390 F.3d at 1086 (distinguishing *Ramirez* because, during the commission of his triggering offense, "Rios struggled with the loss prevention officer and tried to avoid apprehension" and, during his prior robbery "strikes," Rios' "cohort *used* a knife" (emphasis added)).

The dissent argues that we are being unfaithful to *Ramirez* because *Ramirez* "focuses on the *presence* of a weapon, not whether, how, or where it was or was not *used* " and "Reyes ... himself, carried the weapon."   Dissent at 971 n. 1 (emphasis in original).  With respect to our able colleague, we believe that he is misreading *Ramirez*.  *Ramirez* never refers to "the presence of a weapon." Rather, each time *Ramirez* refers to weapons, it refers exclusively to whether weapons were "involved." 365 F.3d at 757, 768, 775;  *see also Rios*, 390 F.3d at 1086 (noting that *Ramirez*' "prior convictions are for non-violent robberies in which no weapons were *involved* " (emphasis added)).  We understand *Ramirez*' use of the word "involved" to mean "engaged or employed." Webster's Encyclopedic Unabridged Dictionary of the English Language 1005 (rev. ed.1996) (defining "involve" as "to engage or employ").  Surely, involving, engaging, or employing a weapon constitutes more than the mere presence of an unused weapon.

The dissent also asserts that "*Rios* arguably weighs in favor of finding Reyes' punishment justified" because "in *Rios* ... Rios' *cohort* used a weapon," whereas here "Reyes ... *himself*, carried the weapon."   Dissent at 971 n. 1 (emphasis added).  We think our colleague misses the point.  *If* Reyes (or an accomplice, if any) actually *used* a knife in the commission of his 1987 robbery, "an inference of gross disproportionality" would not be raised because it is the *use* of a weapon that " 'threaten[s] to cause grave harm.' " *Ramirez*, 365 F.3d at 765, 768 (quoting *Harmelin*, 501 U.S. at 1002, 111 S.Ct. 2680 (Kennedy, J., concurring)).  Would our dissenting colleague hold that a shoplifter caught with a small pocket-knife in his pocket necessarily committed a violent crime?   In this case, the record is entirely unclear as to whether the conduct underlying Reyes' 1987 conviction involved anything more.

(FN8.) The dissent labels Reyes a "career criminal" whose "criminal history

© 2005 Thomson/West. No claim to original U.S. Govt. works.

399 F.3d 964, Reyes v. Brown, (C.A.9 (Cal.) 2005)

reflects the very type and degree of recidivism the Supreme Court recognizes Three Strikes laws were properly intended to address."   Dissent at 971 (citing *Rummel v. Estelle,* 445 U.S. 263, 284-85, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980)).   But Reyes is no more a career criminal than the petitioner in *Solem,* who the Supreme Court held was entitled to habeas relief under the Eighth Amendment.   *Compare* Dissent at 971 (noting that, between 1981 and 1997, Reyes committed six crimes) *with Solem,* 463 U.S. at 279-80, 103 S.Ct. 3001 (discussing Solem's six convictions for third-degree burglary, obtaining money under false pretenses, grand larceny, and driving while intoxicated).

(FN9.) Our suspicion that Reyes' twenty-six years to life sentence may be grossly disproportionate to the gravity of his triggering offense and criminal history is also supported by the fact that the State offered Reyes a deal of four years imprisonment in exchange for a guilty plea to the triggering perjury charge.  By offering Reyes such a heavily discounted sentence, an inference may properly be raised that the State did not view Reyes as a "danger to society" and that the State did not feel "the need to counter his threat with incapacitation." *Andrade,* 538 U.S. at 81, 123 S.Ct. 1166 (Souter, J., dissenting).

(FN1.) The panel majority attempts to distinguish *Reyes* from *Rios v. Garcia,* 390 F.3d 1082 (9th Cir.2004), by focusing on the fact that Rios' cohort *used* a weapon.  This sort of parsing is unpersuasive in distinguishing the two cases and also illustrates the difficulties of following precedent such as *Ramirez.* First, as unworkable as *Ramirez* is, it focuses on the *presence* of a weapon, not whether, how, or where it was or was not *used.*   Second, even *Rios* arguably weighs in favor of finding Reyes' punishment justified; in *Rios,* the court found his punishment justified simply because Rios' cohort had a weapon. Reyes has no such excuse because he, himself, carried the weapon.  Finally, *Rios* and the majority opinion here foretell what is to come in the wake of *Ramirez:* inconsistent outcomes in cases depending on whether individual panels choose to focus on the *presence* versus the *use* versus the*involvement* of a weapon.  Surely the Eighth Amendment analysis must rely on more substantive distinctions.  All three cases err in ignoring the key point that the Three Strikes Statute punishes recidivism, not subtle differences between the nature of the triggering offense or prior offenses.

*972_  (FN2.) Ramirez did not explicitly list a set of factors to consider when making this inquiry, nor did it explicitly state that this was a balancing test, leaving future panels with the unfortunate task of gleaning clear guidelines from the opinion.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

· PROBATION, POLICE
REPORTS

EXH-A

Citation/Title
37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

**\*259**   37 Cal.Rptr.2d 259

9 Cal.4th 464, 886 P.2d 1252

Supreme Court of California,
In Bank.

The PEOPLE, Plaintiff and Respondent,
v.
Roy Clifford DUVALL, Defendant and Appellant.
In re Roy Clifford DUVALL, on Habeas Corpus.

**No. S032489.**
Jan. 19, 1995.

Rehearing Denied March 16, 1995.

After he was convicted of second-degree murder by the Superior Court, Lake County, No. CR-3235, Robert L. Crone, J., petitioner sought writ of habeas corpus.  The Court of Appeal issued writ and reversed conviction, concluding that People's return to order to show cause (OSC) was insufficient, as it contained only general denial of petitioner's factual allegations.  Review was granted, superseding the opinion of the Court of Appeal.  The Supreme Court, Lucas, C.J., held that:  (1) general rule requiring pleading of facts in habeas corpus proceedings should not be enforced so strictly as to defeat ends of justice;  (2) when party can allege he or she acted with due diligence, crucial information is not readily available, and there is good reason to dispute certain facts or testimony, courts evaluating return and traverse should determine whether evidentiary hearing is required;  (3) return to OSC should set forth with specificity why information is not readily available, steps that were taken to try to obtain it, and why party believes facts are untrue;  and (4) Court of Appeal should have appointed referee to hold evidentiary hearing.

Vacated and remanded with directions.

Arabian, J., filed concurring and dissenting opinion in which George, J., and Steven J. Stone, J., assigned, joined.

West Headnotes

[1]  Habeas Corpus ⚓687

197 ----
197III Jurisdiction, Proceedings, and Relief

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

    197III(C) Proceedings
        197III(C)1 In General
            197k687 Issues, Proof, and Variance.

    [See headnote text below]

[1] Habeas Corpus ⬤➞702

    197 ----
        197III Jurisdiction, Proceedings, and Relief
        197III(C) Proceedings
        197III(C)2 Evidence
            197k701 Presumptions
                197k702 Validity and Regularity of Prior Proceedings.

  Petition for writ of habeas corpus seeks to collaterally attack presumptively
final criminal judgment, and thus petitioner bears heavy burden initially to
plead sufficient grounds for relief, and later to prove them.

[2] Habeas Corpus ⬤➞665.1

    197 ----
        197III Jurisdiction, Proceedings, and Relief
        197III(C) Proceedings
        197III(C)1 In General
            197k665 Petition or Application
                197k665.1 In General.

  Petition for habeas corpus should both state fully and with particularity the
facts on which relief is sought, and include copies of reasonably available
documentary evidence supporting claim, including pertinent portions of trial
transcripts and affidavits or declarations.

[3] Habeas Corpus ⬤➞702

    197 ----
        197III Jurisdiction, Proceedings, and Relief
        197III(C) Proceedings
        197III(C)2 Evidence
            197k701 Presumptions
                197k702 Validity and Regularity of Prior Proceedings.

    [See headnote text below]

[3] Habeas Corpus ⬤➞705.1

    197 ----
        197III Jurisdiction, Proceedings, and Relief
        197III(C) Proceedings

        © 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

```
197III(C)2 Evidence
   197k705 Burden of Proof
      197k705.1 In General.
```

Supreme Court presumes regularity of proceedings that resulted in final judgment, and burden is on habeas corpus petitioner to establish grounds for his release.

[4]  Habeas Corpus ☞665.1

```
197 ----
   197III Jurisdiction, Proceedings, and Relief
      197III(C) Proceedings
         197III(C)1 In General
            197k665 Petition or Application
               197k665.1 In General.
```

Appellate court receiving petition for habeas corpus evaluates it by asking whether, assuming petition's factual allegations are true, petitioner would be entitled to relief.

[5]  Habeas Corpus ☞675

```
197 ----
   197III Jurisdiction, Proceedings, and Relief
      197III(C) Proceedings
         197III(C)1 In General
            197k674 Allowance and Issuance of Writ or Rule to Show Cause
               197k675 Summary Disposition for Facial Insufficiency of
                  Petition.
```

If no prima facie case for relief is stated in petition for habeas corpus, court will summarily deny petition.

[6]  Habeas Corpus ☞674.1

```
197 ----
   197III Jurisdiction, Proceedings, and Relief
      197III(C) Proceedings
         197III(C)1 In General
            197k674 Allowance and Issuance of Writ or Rule to Show Cause
               197k674.1 In General.
```

If court finds factual allegations of habeas corpus petition, taken as true, establish prima facie case for relief, court will issue order to show cause (OSC).

[7]  Habeas Corpus ☞674.1

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

```
      197 ----
         197III Jurisdiction, Proceedings, and Relief
            197III(C) Proceedings
               197III(C)1 In General
                  197k674 Allowance and Issuance of Writ or Rule to Show Cause
                     197k674.1 In General.
```

   Issuance of order to show cause (OSC) indicates issuing court's preliminary
assessment that habeas corpus petitioner would be entitled to relief if his
factual allegations are proved.

[8]  Habeas Corpus ☞674.1

```
      197 ----
         197III Jurisdiction, Proceedings, and Relief
            197III(C) Proceedings
               197III(C)1 In General
                  197k674 Allowance and Issuance of Writ or Rule to Show Cause
                     197k674.1 In General.
```

   Facts tending to establish legality of habeas corpus petitioner's detention,
required to be alleged in return to order to show cause (OSC), are not simply
existence of judgment of conviction and sentence when petitioner challenges his
restraint in prison.  West's Ann.Cal.Penal Code § 1480.

[9]  Habeas Corpus ☞681

```
      197 ----
         197III Jurisdiction, Proceedings, and Relief
            197III(C) Proceedings
               197III(C)1 In General
                  197k680 Return or Answer
                     197k681 Mode, Form, Requisites, and Sufficiency.
```

   Factual allegations of return to order to show cause (OSC) must respond to
allegations of petition for habeas corpus that form basis of petitioner's claim
that confinement is unlawful.  West's Ann.Cal.Penal Code § 1480.

[10] Habeas Corpus ☞681

```
      197 ----
         197III Jurisdiction, Proceedings, and Relief
            197III(C) Proceedings
               197III(C)1 In General
                  197k680 Return or Answer
                     197k681 Mode, Form, Requisites, and Sufficiency.
```

   People's burden, on return to order to show cause (OSC) stage of habeas corpus
proceeding, is one of pleading, and not proof.  West's Ann.Cal.Penal Code §

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)
1480.

[11] Habeas Corpus ⬚⟿705.1

    197 ----
      197III Jurisdiction, Proceedings, and Relief
        197III(C) Proceedings
        197III(C)2 Evidence
         197k705 Burden of Proof
          197k705.1 In General.

  Habeas corpus petitioner who seeks to overturn presumptively valid criminal judgment in collateral attack retains heavy burden to prove facts that he or she claims justify relief.

[12] Habeas Corpus ⬚⟿681

    197 ----
      197III Jurisdiction, Proceedings, and Relief
        197III(C) Proceedings
        197III(C)1 In General
         197k680 Return or Answer
          197k681 Mode, Form, Requisites, and Sufficiency.

    [See headnote text below]

[12] Habeas Corpus ⬚⟿682

    197 ----
      197III Jurisdiction, Proceedings, and Relief
        197III(C) Proceedings
        197III(C)1 In General
         197k680 Return or Answer
          197k682 Production of Record or Transcript.

  In addition to stating facts which respond to allegations of habeas corpus petition that form basis of petitioner's claim that confinement is unlawful, return to order to show cause (OSC) should also, where appropriate, provide such documentary evidence, affidavits, or other *259 materials as will enable court to determine which issues are clearly disputed.  West's Ann.Cal.Penal Code § 1480.

[13] Habeas Corpus ⬚⟿681

    197 ----
      197III Jurisdiction, Proceedings, and Relief
        197III(C) Proceedings
        197III(C)1 In General
         197k680 Return or Answer

    © 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

197k681 Mode, Form, Requisites, and Sufficiency.

Requirement that return to order to show cause (OSC) allege facts responsive to petition for habeas corpus is critical, as factual allegations in return are either admitted or disputed in traverse than filed by petitioner, framing factual issues that court must decide.  West's Ann.Cal.Penal Code § 1480.

[14] Habeas Corpus ☞686

    197 ----
        197III Jurisdiction, Proceedings, and Relief
          197III(C) Proceedings
            197III(C)1 In General
              197k686 Reply or Answer to Return or Answer.

In habeas corpus proceeding, facts set forth in return to order to show cause (OSC) that are not disputed in traverse are deemed true.

[15] Habeas Corpus ☞742

    197 ----
        197III Jurisdiction, Proceedings, and Relief
          197III(C) Proceedings
            197III(C)3 Hearing
              197k742 Discretion and Necessity in General.

When return to order to show cause (OSC) in habeas corpus proceeding effectively acknowledges or admits allegations in petition and traverse which, if true, justify relief sought, such relief may be granted without hearing on other factual issues joined by pleadings.

[16] Habeas Corpus ☞686

    197 ----
        197III Jurisdiction, Proceedings, and Relief
          197III(C) Proceedings
            197III(C)1 In General
              197k686 Reply or Answer to Return or Answer.

To respond to return to order to show cause (OSC), habeas corpus petitioner may either file traverse, or parties may stipulate that original habeas corpus petition be treated as traverse.

[17] Habeas Corpus ☞686

    197 ----
        197III Jurisdiction, Proceedings, and Relief
          197III(C) Proceedings
            197III(C)1 In General

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

197k686 Reply or Answer to Return or Answer.

Three important rules govern traverse, on petition for habeas corpus:  factual allegations of return to order to show cause (OSC) will be deemed true unless habeas corpus petitioner denies truth of respondent's allegations in traverse and either realleges facts set out in his petition or by stipulation petition is deemed traverse;  if factual allegations in return are so inadequate that petitioner cannot answer them, petitioner may except to sufficiency of return in traverse, raising questions of law in procedure analogous to demurrer;  and although traverse may allege additional facts in support of claim on which OSC has been issued, attempts to introduce additional claims or wholly different factual basis for those claims in traverse do not expand scope of proceeding, which is limited to claims which court initially determined stated prima facie case for relief.

[18] Habeas Corpus ☞686

    197 ----
        197III Jurisdiction, Proceedings, and Relief
         197III(C) Proceedings
          197III(C)1 In General
             197k686 Reply or Answer to Return or Answer.

If habeas corpus petitioner fails to reassert factual allegations in traverse, stipulate that petition should serve as traverse, or except to sufficiency of return to order to show cause (OSC), allegations of return are deemed admitted and relief will be denied.

[19] Habeas Corpus ☞686

    197 ----
        197III Jurisdiction, Proceedings, and Relief
         197III(C) Proceedings
          197III(C)1 In General
             197k686 Reply or Answer to Return or Answer.

Habeas corpus petitioner must timely raise objections to return to order to show cause (OSC), or he will be deemed to have waived them.

[20] Habeas Corpus ☞681

    197 ----
        197III Jurisdiction, Proceedings, and Relief
         197III(C) Proceedings
          197III(C)1 In General
             197k680 Return or Answer
                197k681 Mode, Form, Requisites, and Sufficiency.

Return to order to show cause (OSC) is central to habeas corpus process, and

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

return must state facts and respond to factual allegations set forth in
petition.  West's Ann.Cal.Penal Code § 1480.

[21] Habeas Corpus ⛭687

        197 ----
            197III Jurisdiction, Proceedings, and Relief
              197III(C) Proceedings
                197III(C)1 In General
                  197k687 Issues, Proof, and Variance.

   Process of defining issues in habeas corpus proceeding is important, as issues
not raised in pleadings need not be addressed.

[22] Habeas Corpus ⛭754

        197 ----
            197III Jurisdiction, Proceedings, and Relief
              197III(C) Proceedings
                197III(C)3 Hearing
                  197k754 Reference.

   When, after considering return to order to show cause (OSC) and traverse in
habeas corpus proceeding, court finds material facts in dispute, it may appoint
referee and order evidentiary hearing be held.

[23] Habeas Corpus ⛭742

        197 ----
            197III Jurisdiction, Proceedings, and Relief
              197III(C) Proceedings
                197III(C)3 Hearing
                  197k742 Discretion and Necessity in General.

   Where there are no disputed factual questions as to matters outside trial
record, merits of habeas corpus petition can be decided without evidentiary
hearing, and thus, when return to order to show cause (OSC) effectively admits
material factual allegations of petition and traverse by not disputing them,
court may resolve issue without ordering evidentiary hearing.

[24] Habeas Corpus ⛭681

        197 ----
            197III Jurisdiction, Proceedings, and Relief
              197III(C) Proceedings
                197III(C)1 In General
                  197k680 Return or Answer
                    197k681 Mode, Form, Requisites, and Sufficiency.


   © 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

Practice in habeas corpus proceedings of filing return to order to show cause (OSC) containing only general denials is disapproved.  West's Ann.Cal.Penal Code § 1480.

[25] Habeas Corpus ☜681

    197 ----
        197III Jurisdiction, Proceedings, and Relief
          197III(C) Proceedings
            197III(C)1 In General
              197k680 Return or Answer
                197k681 Mode, Form, Requisites, and Sufficiency.

By failing to allege facts demonstrating lawfulness of challenged detention, return to order to show cause (OSC) in habeas corpus proceeding containing only general denials is deficient in two ways:  it fails to fulfill its function of narrowing facts and issues to those that are truly in dispute;  and prevents habeas corpus petitioner from controverting those facts in his or her traverse.  West's Ann.Cal.Penal Code § 1480.

[26] Habeas Corpus ☜681

    197 ----
        197III Jurisdiction, Proceedings, and Relief
          197III(C) Proceedings
            197III(C)1 In General
              197k680 Return or Answer
                197k681 Mode, Form, Requisites, and Sufficiency.

People's specific denial that habeas corpus petitioner received ineffective assistance of counsel at trial, in their return to order to show cause (OSC), did not indicate factual basis upon which People reached that conclusion, and thus could fairly be characterized as general denial, as it did not assist appellate court in identifying material factual issues actually in dispute.  West's Ann.Cal.Penal Code § 1480.

[27] Appeal and Error ☜761

    30 ----
        30XII Briefs
          30k761 Points and Arguments.

In general, memoranda of points and authorities state legal arguments, not facts, and thus will fail to narrow factual  *259  issues that must be determined to resolve dispute.

[28] Habeas Corpus ☜601

    197 ----

              © 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

>       197III Jurisdiction, Proceedings, and Relief
>           197III(A) In General
>           197k601 In General.

Goal of procedures that govern habeas corpus proceedings is to provide framework in which court can discover truth and do justice in timely fashion.

[29] Habeas Corpus ⊕680.1

>       197 ----
>           197III Jurisdiction, Proceedings, and Relief
>               197III(C) Proceedings
>                   197III(C)1 In General
>                       197k680 Return or Answer
>                           197k680.1 In General.

Purpose of return to order to show cause (OSC) in habeas corpus proceeding is to assist court that issued OSC in determining what material issues are truly disputed by parties.  West's Ann.Cal.Penal Code § 1480.

[30] Habeas Corpus ⊕681

>       197 ----
>           197III Jurisdiction, Proceedings, and Relief
>               197III(C) Proceedings
>                   197III(C)1 In General
>                       197k680 Return or Answer
>                           197k681 Mode, Form, Requisites, and Sufficiency.

>       [See headnote text below]

[30] Habeas Corpus ⊕705.1

>       197 ----
>           197III Jurisdiction, Proceedings, and Relief
>               197III(C) Proceedings
>                   197III(C)2 Evidence
>                       197k705 Burden of Proof
>                           197k705.1 In General.

People need not prove habeas corpus petitioner's factual allegations are wrong in return to order to show cause (OSC);  if evidentiary hearing is held, petitioner bears burden of proof.  West's Ann.Cal.Penal Code § 1480.

[31] Habeas Corpus ⊕681

>       197 ----
>           197III Jurisdiction, Proceedings, and Relief
>               197III(C) Proceedings

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

        197III(C)1 In General
         197k680 Return or Answer
          197k681 Mode, Form, Requisites, and Sufficiency.

  Declarations by experts presented by habeas corpus petitioner need not be met with counterdeclarations by experts solicited by respondent at return to order to show cause (OSC) stage of proceedings; rather, it is sufficient for respondent to inform court it intends to dispute credibility of petitioner's expert. West's Ann.Cal.Penal Code § 1480.

[32] Habeas Corpus ⬳664

    197 ----
      197III Jurisdiction, Proceedings, and Relief
       197III(C) Proceedings
        197III(C)1 In General
         197k664 Pleadings and Motions in General.

  In cases in which access to critical information is limited or denied to one party, where it is unreasonable to expect party to obtain information at pleading stage, or where proper resolution of case hinges on credibility of witnesses, general rule requiring pleading of facts in habeas corpus proceedings should not be enforced in such draconian fashion as to defeat ends of justice.

[33] Habeas Corpus ⬳742

    197 ----
      197III Jurisdiction, Proceedings, and Relief
       197III(C) Proceedings
        197III(C)3 Hearing
         197k742 Discretion and Necessity in General.

  When one party to habeas corpus proceeding can allege he or she acted with due diligence, crucial information is not readily available, and there is good reason to dispute certain alleged facts or question credibility of certain declarants, courts evaluating return and traverse should endeavor to determine whether there are facts legitimately in dispute that may require holding of evidentiary hearing.

[34] Habeas Corpus ⬳681

    197 ----
      197III Jurisdiction, Proceedings, and Relief
       197III(C) Proceedings
        197III(C)1 In General
         197k680 Return or Answer
          197k681 Mode, Form, Requisites, and Sufficiency.

  To assist court in making determination of whether there are facts

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

legitimately in dispute in habeas corpus proceeding that may require holding of evidentiary hearing, return to order to show cause (OSC) should set forth with specificity:  why information is not readily available;  steps that were taken to try to obtain it;  and why party believes in good faith that certain alleged facts are untrue.  West's Ann.Cal.Penal Code § 1480.

[35] Habeas Corpus ⬤━681

    197 ----
        197III Jurisdiction, Proceedings, and Relief
         197III(C) Proceedings
          197III(C)1 In General
           197k680 Return or Answer
             197k681 Mode, Form, Requisites, and Sufficiency.

    [See headnote text below]

[35] Habeas Corpus ⬤━742

    197 ----
        197III Jurisdiction, Proceedings, and Relief
         197III(C) Proceedings
          197III(C)3 Hearing
           197k742 Discretion and Necessity in General.

    [See headnote text below]

[35] Habeas Corpus ⬤━754

    197 ----
        197III Jurisdiction, Proceedings, and Relief
         197III(C) Proceedings
          197III(C)3 Hearing
           197k754 Reference.

 Court of Appeal should have appointed referee to hold evidentiary hearing to determine truth or falsity of factual allegations of habeas corpus petitioner and defense investigator regarding defense counsel's alleged failure to investigate and present defense in murder prosecution based on petitioner's alleged diminished mental state;  although return to order to show cause (OSC) might have been technically deficient, its contents coupled with memorandum of points and authorities demonstrated that respondent identified facts it wished to dispute, and critical information was possessed by petitioner and not reasonably available to respondent.

 **\*262**  [9 Cal.4th 469] [886 P.2d 1255] J. Bradley O'Connell, San Francisco, under appointment by the Supreme Court, and Sally McGough, Petaluma, under appointment by the Court of Appeal, for defendant and appellant and for petitioner.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

[9 Cal.4th 470] Daniel E. Lungren, Atty. Gen., George Williamson, Chief Asst. Atty. Gen., John H. Sugiyama and Ronald A. Bass, Asst. Attys. Gen., Stan M. Helfman, Gerald A. Engler and Morris Beatus, Deputy Attys. Gen., for plaintiff and respondent.

LUCAS, Chief Justice.

We granted review in this case to address certain procedural rules governing petitions for writs of habeas corpus in this state. Specifically, we are concerned here with the legal sufficiency of the People's return to an order to show cause that was issued by the Court of Appeal. As we explain, although we agree with the appellate court's interpretation of prior case law applicable to habeas corpus petitions, the modern expansion of the availability of relief on habeas corpus--as illustrated by the facts of this case--justify a clarification of the pleading rules applicable to such petitions. Applying that clarification here, we remand this case to the Court of Appeal with directions to appoint a referee and order an evidentiary hearing in this case.

### FACTS AND PROCEDURE

On February 13, 1991, defendant was at the home of victim Rubin Flores, cutting wood. Defendant asked for a kiss from Flores's wife, Rosemarie, and became angry when she refused. The next day, defendant was again at the Flores home. Also present were Rosemarie as well as other friends, including Kevin Trout. Most of those present were drinking beer; Trout estimated that defendant and Flores each drank more than six beers that day. In addition, both Flores and defendant took a muscle relaxant, later identified as carisoprodol.

Flores gave defendant a white-handled pocketknife as a "friendship Valentine present." Despite this gesture of hospitality, tensions rose during the course of the day. Rosemarie became annoyed when defendant increased the volume on the stereo. Later, *263 [886 P.2d 1256] she declined defendant's renewed request for a kiss. Flores became visibly upset at defendant's attention toward Rosemarie. Trout suggested that the men go to his house to cool off.

At Trout's home, the group continued to drink beer; defendant and others also drank tequila. Defendant and Flores walked across the street to the home of Gary and Etta Harness. Etta testified that Flores staggered around her house, and was apparently quite drunk. Defendant was not staggering, but his speech was slurred. Flores and defendant returned to Trout's home, [9 Cal.4th 471] where Flores spent an hour talking to his wife on the telephone. Rosemarie heard defendant and her husband arguing in the background about the kissing incident and then the line went dead. Rosemarie took the children to her mother's house, leaving Flores a note saying she would call him the next day when he was sober.

Flores was upset about his conversation with Rosemarie. Eventually, Trout drove defendant, Flores, and another man (Gessler) back to Flores's house. Trout watched as defendant and Flores began arguing on the front porch; Trout

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

could hear that the men were arguing about defendant's behavior toward Rosemarie.  Suddenly a knife appeared in defendant's hand and he began stabbing Flores in a "hook motion."   Trout did not see any weapon in Flores's hand. Gessler also saw defendant stabbing Flores, and confirmed Flores was unarmed.

When Trout and Gessler intervened, Flores exclaimed that defendant had stabbed him.  Defendant ran off and was arrested later at a nearby motel.  The motel's manager testified that defendant had a slash wound on his leg, but he appeared calm and his speech was normal.  The arresting officer testified that although defendant smelled strongly of alcohol, his speech was not slurred and he was able to stand up straight.  The treating physician gave similar testimony.

A blood sample drawn three hours after the crime showed defendant's blood-alcohol content was .20 percent;  a prosecution expert opined that this meant defendant's blood-alcohol level was .26 percent at the time of the crime.  The blood sample also showed the presence of carisoprodol as well as meprobamate, a metabolite of carisoprodol.  Rubin Flores died of his wounds.

Defendant did not testify, but relied on a theory of self-defense, emphasizing his own leg wound as evidence that Flores was armed.  Police found three other knives in the general area of the crime, but there was no direct evidence showing Flores had wielded any of them.  Defense counsel's theory was that defendant, reasonably or unreasonably, believed he was defending himself against an enraged and drunken victim.  Defense counsel argued Flores must have had a knife that was never recovered, suggesting that Trout may have taken the knife away with him;  Trout expressly denied this.  A jury convicted defendant of second degree murder.

Defendant challenged his conviction in the Court of Appeal by filing both an appeal and a petition for a writ of habeas corpus.  In his habeas corpus petition, he contended that defense counsel was constitutionally ineffective [9 Cal.4th 472] for failing to adequately investigate and present a defense based on intoxication.  Defendant submitted his own declaration stating counsel was aware defendant was intoxicated at the time of the crime, but that counsel never discussed an intoxication defense with him.  These facts were essentially corroborated in a declaration by the defense investigator, Chuck Harrington. This showing was supplemented by a letter from Dr. Ronald Siegel, who opined that the combination of alcohol and carisoprodol "could have been sufficient to catapult the defendant into a state of confusional delirium marked by disinhibition and maladaptive behavior."   According to Siegel, such a drug/ alcohol-induced state would allow the petitioner to appear calm and goal-directed because he would be responding to a "confused version of reality."  Defense counsel died sometime after trial.

The Court of Appeal consolidated the direct appeal with the habeas corpus petition and asked the Attorney General for informal opposition to the habeas corpus petition.  (See Cal.Rules of Court, rule 60.)   After *264 [886 P.2d 1257] receiving the People's opposition, the Court of Appeal issued an order to show cause (hereafter OSC), instructing the Director of Corrections (hereafter

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

sometimes respondent) to show cause why relief should not be granted.  The Court of Appeal specifically cited *In re Sixto* (1989) 48 Cal.3d 1247, 1252, 259 Cal.Rptr. 491, 774 P.2d 164 (hereafter *Sixto* ), and *In re Lewallen* (1979) 23 Cal.3d 274, 278 & footnote 2, 152 Cal.Rptr. 528, 590 P.2d 383 (hereafter *Lewallen* ), thereby presumably placing respondent on notice of the language in those cases disapproving general denials in the return.

The Attorney General, representing respondent Director of Corrections, then filed his return to the OSC.  (See Pen.Code, § 1480.)  (FN1)  Here reproduced in full, it stated:  "Come now the People of the State of California and, for a Return o[f] this Court's Order to Show Cause, state:  [¶]  I.  [¶] Petitioner is lawfully in the custody of the Department of Corrections and is serving a term of 17 years to life for murder and enhancements for personal weapon use and a prior prison term.  The procedural and factual history of the challenged conviction are set forth in the Respondent's Brief filed in petitioner's pending direct appeal (A054254) [¶] II.   [¶] Respondent admits the allegations of paragraphs one through six, nine, and twelve through sixteen of the Petition, and denies the allegations of paragraphs seven through eleven of the Petition. Specifically, respondent denies that petitioner received ineffective assistance of counsel in connection with his defense, or that any act or omission by his trial counsel prejudiced the defense [¶] III.   [¶] Except as specifically admitted herein, respondent denies each and every material allegation in the Petition.  [¶] WHEREFORE, respondent prays that the [9 Cal.4th 473] Order to Show Cause be discharged and that the Petition be denied."  (Fn. omitted.)   In a footnote, the return stated:  "We request this Court to take judicial notice of its file in direct appeal A054254."

Accompanying the return was (1) a verification, signed by the deputy attorney general who prepared the return (see § 1480, subd. 5), and (2) a memorandum of points and authorities.  The latter document begins:  "We hereby incorporate by reference and make a part of this Return the Respondent's Brief filed in direct appeal [No.] A054254.  In addition, we add the following...."  Respondent then set forth three legal arguments:  (1) defendant failed to show that his trial counsel's decision to forego an intoxication defense was not based on a valid tactical decision;  (2) even if the omission constituted inadequate representation, there was no prejudice;  and (3) "the matter should be remanded to the trial court for an evidentiary hearing on disputed factual issues relating to deficient attorney performance and prejudice."  (Capitalization altered.)

Under the third heading in the memorandum of points and authorities, respondent stated he:  "denies allegations [in the petition] based on the declaration of [defendant], who claims never to have discussed the matter of a mental defense with his attorney.  Such declarations are 'subjective, self-serving, and, by [themselves], insufficient to satisfy the *Strickland* test for prejudice.'  (*In re Alvernaz* (1992) 2 Cal.4th 924, 939, 8 Cal.Rptr.2d 713, 830 P.2d 747.)"  (See *Strickland v. Washington* (1984) 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.)   In a footnote, respondent stated:  "We also dispute the factual allegations of trial counsel's investigator in this case, Chuck

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

Harrington."  Arguing that respondent had not had the "opportunity to test the opinions of any defense expert, or offer its own expert's opinion, on the effect of alcohol and muscle relaxant on [defendant]," respondent requested the matter be remanded for an evidentiary hearing.

After considering the factual allegations raised in defendant's habeas corpus petition, the return, and the traverse, and without ordering an evidentiary hearing, the Court of Appeal issued a writ of habeas corpus and reversed defendant's conviction.  In so doing, the appellate court concluded:  (1) the respondent's return to the show cause order was insufficient, containing only a general denial of the factual allegations in defendant's petition;  (2) consequently, there were no contested material facts that would require an evidentiary hearing for resolution;  **265** [886 P.2d 1258] and (3) deeming true defendant's factual allegations, he was entitled to relief.  These three conclusions by the Court of Appeal form the basis of the present controversy.

### DISCUSSION

Respondent argues the Court of Appeal misperceived the pleading requirements applicable in habeas corpus proceedings.  Because the number of [9 Cal.4th 474] habeas corpus petitions filed in this state and with the appellate courts has grown dramatically in recent times (see *In re Harris* (1993) 5 Cal.4th 813, 826, fn. 4, 21 Cal.Rptr.2d 373, 855 P.2d 391 (hereafter *Harris* )), proper understanding of the procedural requirements applicable to habeas corpus petitions is of statewide concern.  Accordingly, we begin by summarizing the applicable procedural requirements.

### A. A Summary of Habeas Corpus Procedure

[1] Our state Constitution guarantees that a person improperly deprived of his or her liberty has the right to petition for a writ of habeas corpus.  (Cal. Const., art. I, § 11;  see *In re Clark* (1993) 5 Cal.4th 750, 764 & fn. 2, 21 Cal.Rptr.2d 509, 855 P.2d 729 (hereafter *Clark* ).)   Because a petition for a writ of habeas corpus seeks to collaterally attack a presumptively final criminal judgment, the petitioner bears a heavy burden initially to *plead* sufficient grounds for relief, and then later to *prove* them.  "For purposes of collateral attack, all presumptions favor the truth, accuracy, and fairness of the conviction and sentence; *defendant* thus must undertake the burden of overturning them.  Society's interest in the finality of criminal proceedings so demands, and due process is not thereby offended."  (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1260, 275 Cal.Rptr. 729, 800 P.2d 1159, italics in original (hereafter *Gonzalez* ).)

[2] [3] To satisfy the initial burden of pleading adequate grounds for relief, an application for habeas corpus must be made by petition, and "[i]f the imprisonment is alleged to be illegal, the petition must also state in what the alleged illegality consists."  (§ 1474, subd. 2.)   The petition should both (i) state fully and with particularity the facts on which relief is sought (*People v. Karis* (1988) 46 Cal.3d 612, 656, 250 Cal.Rptr. 659, 758 P.2d 1189 (hereafter

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

*Karis* ); *In re Swain* (1949) 34 Cal.2d 300, 304, 209 P.2d 793), as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations. (*Harris, supra,* 5 Cal.4th at p. 827, fn. 5, 21 Cal.Rptr.2d 373, 855 P.2d 391; *Clark, supra,* 5 Cal.4th at p. 791, fn. 16, 21 Cal.Rptr.2d 509, 855 P.2d 729.) "Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing." (*Karis, supra,* 46 Cal.3d at p. 656, 250 Cal.Rptr. 659, 758 P.2d 1189.) We presume the regularity of proceedings that resulted in a final judgment (*In re Bell* (1942) 19 Cal.2d 488, 500, 122 P.2d 22), and, as stated above, the burden is on the petitioner to establish grounds for his release. ( *Gonzalez, supra,* 51 Cal.3d at p. 1260, 275 Cal.Rptr. 729, 800 P.2d 1159; *In re Williams* (1920) 183 Cal. 11, 14, 190 P. 163; *In re McVickers* (1946) 29 Cal.2d 264, 285, 176 P.2d 40.) (conc. & dis. opn. of Spence, J.); *In re Oxman* (1950) 100 Cal.App.2d 148, 151, 223 P.2d 66.)

[4] [5] [6] [7] An appellate court receiving such a petition evaluates it by asking whether, assuming the petition's factual allegations are true, the petitioner [9 Cal.4th 475] would be entitled to relief. (*Clark, supra,* 5 Cal.4th at p. 769, fn. 9, 21 Cal.Rptr.2d 509, 855 P.2d 729; *In re Lawler* (1979) 23 Cal.3d 190, 194, 151 Cal.Rptr. 833, 588 P.2d 1257 (hereafter *Lawler* ).) If no prima facie case for relief is stated, the court will summarily deny the petition. If, however, the court finds the factual allegations, taken as true, establish a prima facie case for relief, the court will issue an OSC. (*Clark, supra,* at p. 781, fn. 16, 21 Cal.Rptr.2d 509, 855 P.2d 729; *In re Hochberg* (1970) 2 Cal.3d 870, 875, fn. 4, 87 Cal.Rptr. 681, 471 P.2d 1.) "When an order to show cause does issue, it is limited to the claims raised in the petition and the factual bases for those claims alleged in the petition. It directs the respondent to address only those issues." (*Clark, supra,* at p. 781, fn. 16, 21 Cal.Rptr.2d 509, 855 P.2d 729.) Issuance of an OSC, therefore, indicates the issuing *266 [886 P.2d 1259] court's *preliminary assessment* that the petitioner would be entitled to relief if his factual allegations are proved.

We have consistently followed this procedure when evaluating habeas corpus petitions. (See, e.g., *People v. Pensinger* (1991) 52 Cal.3d 1210, 1272, 278 Cal.Rptr. 640, 805 P.2d 899; *People v. Williams* (1988) 44 Cal.3d 883, 936, fn. 30, 245 Cal.Rptr. 336, 751 P.2d 395; *Lawler, supra,* 23 Cal.3d at p. 194, 151 Cal.Rptr. 833, 588 P.2d 1257; see also *People v. Miranda* (1987) 44 Cal.3d 57, 119, fn. 37, 241 Cal.Rptr. 594, 744 P.2d 1127 [limiting issues in OSC "was an implicit determination that in his petition for habeas corpus defendant failed to make a prima facie case as to the other issues presented"]; *Gonzalez, supra,* 51 Cal.3d at p. 1240, 275 Cal.Rptr. 729, 800 P.2d 1159 [amending OSC to eliminate issues implies petition failed to state prima facie case with respect to those issues].) In doing so, we have explained that the OSC, "although not expressly provided for in the statutes governing the writ, has developed as an appropriate means by which to initiate a hearing and disposition of a [habeas corpus] petition on behalf of a person in custody without the necessity of bringing the petitioner before the court." (*Lawler, supra,* at p. 194, 151 Cal.Rptr. 833, 588 P.2d 1257; see *In re Romero* (1994) 8 Cal.4th 728, 738, 35

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

Cal.Rptr.2d 270, 883 P.2d 388 (hereafter *Romero* ); *In re Hochberg, supra,* 2 Cal.3d at pp. 873-874, fn. 2, 87 Cal.Rptr. 681, 471 P.2d 1.)

Issuance of an OSC signifies the court's preliminary determination that the petitioner has pleaded sufficient facts that, if true, would entitle him to relief. The Penal Code then contemplates the custodian of the confined person shall file a responsive pleading, called a return, justifying the confinement. (§ 1480.) Historically, the required contents of the return were not very extensive. (FN2) This probably is attributable to the fact that as originally conceived, relief on habeas corpus was limited to a claim that the petitioner [9 Cal.4th 476] was confined pursuant to the judgment of a court that lacked jurisdiction. (*Harris, supra,* 5 Cal.4th at p. 836, 21 Cal.Rptr.2d 373, 855 P.2d 391; *Ex parte Long* (1896) 114 Cal. 159, 45 P. 1057.) "[T]his strict jurisdictional view ... has changed over the years" (*Harris, supra,* 5 Cal.4th at p. 836, 21 Cal.Rptr.2d 373, 855 P.2d 391), and the function of habeas corpus has evolved to permit judicial inquiry into a variety of constitutional and jurisdictional issues. (See generally 6 Witkin & Epstein, Cal.Crim.Law (2d ed. 1989) Extraordinary Writs, § 3331(a), p. 4125 (hereafter Witkin & Epstein) ["the functions of habeas corpus have been changed in recent years by decisions substituting the test of fundamental unfairness for the jurisdictional test"].)

[8] [9] [10] [11] [12] As a result of this evolution, this court has required more of the return than mere compliance with the literal language of section 1480; we have required the return to "allege *facts* tending to establish the legality of petitioner's detention." (*Sixto, supra,* 48 Cal.3d at p. 1252, 259 Cal.Rptr. 491, 774 P.2d 164, italics added; see *Romero, supra,* 8 Cal.4th at p. 738, 35 Cal.Rptr.2d 270, 883 P.2d 388 ["The return ... must allege facts establishing the legality of the petitioner's custody."]; *Lawler, supra,* 23 Cal.3d at p. 194, 151 Cal.Rptr. 833, 588 P.2d 1257 [return must allege facts]; *In re Saunders* (1970) 2 Cal.3d 1033, 1047, 88 Cal.Rptr. 633, 472 P.2d 921 (hereafter *Saunders* ) ["In a habeas corpus *267 [886 P.2d 1260] proceeding the return ... alleges facts tending to establish the legality of the challenged detention."].) Those facts are not simply the existence of a judgment of conviction and sentence when the petitioner challenges his restraint in prison. The factual allegations of a return must also respond to the allegations of the petition that form the basis of the petitioner's claim that the confinement is unlawful. (*Romero, supra,* 8 Cal.4th at p. 738, 35 Cal.Rptr.2d 270, 883 P.2d 388; *People v. Pacini* (1981) 120 Cal.App.3d 877, 884, 174 Cal.Rptr. 820.) (FN3) In addition to stating facts, the return should also, "where appropriate, ... provide such documentary evidence, affidavits, or other materials as will enable the court to determine which issues are truly disputed." (*Lewallen, supra,* 23 Cal.3d at p. 278, fn. 2, 152 Cal.Rptr. 528, 590 P.2d 383.)

[13] [14] [15] Following the filing of the return, the habeas corpus petitioner responds to the facts pleaded therein in a pleading called a traverse. The [9 Cal.4th 477] requirement that the return allege facts responsive to the petition is critical, for the factual allegations in the return are either admitted or disputed in the traverse and this interplay frames the factual issues that the court must decide. Facts set forth in the return that are not disputed in the

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

traverse are deemed true.  (*Lawler, supra,* 23 Cal.3d at p. 194, 151 Cal.Rptr. 833, 588 P.2d 1257.)    Conversely, "[w]hen the return effectively acknowledges or 'admits' allegations in the petition and traverse which, if true, justify the relief sought, such relief may be granted without a hearing on the other factual issues joined by the pleadings." (*Saunders, supra,* 2 Cal.3d at p. 1048, 88 Cal.Rptr. 633, 472 P.2d 921.)

   [16] To respond to the return, the habeas corpus petitioner may either file a traverse or the parties may stipulate that the original habeas corpus petition be treated as a traverse.  (*Lawler, supra,* 23 Cal.3d at p. 194, 151 Cal.Rptr. 833, 588 P.2d 1257; *In re Masching* (1953) 41 Cal.2d 530, 533, 261 P.2d 251; 6 Witkin & Epstein, *supra,* § 3377(c), p. 4182 ["Instead of making further allegations in support of his demand for relief, the petitioner, by stipulation or acquiescence, may rely on his original (habeas corpus) petition as a traverse."]; cf. *In re Stafford* (1958) 160 Cal.App.2d 110, 113, 324 P.2d 967 [habeas corpus petitioner did not stipulate that petition be treated as traverse].)

   [17] [18] Three important rules govern the traverse.  First, as stated above, "[t]he factual allegations of the return *will be deemed true unless the petitioner in his traverse denies the truth of the respondent's allegations* and either realleges the facts set out in his petition, or by stipulation the petition is deemed a traverse." (*Lawler, supra,* 23 Cal.3d at p. 194, 151 Cal.Rptr. 833, 588 P.2d 1257, italics added;  see also *Karis, supra,* 46 Cal.3d 612, 656, 250 Cal.Rptr. 659, 758 P.2d 1189; *In re Love* (1974) 11 Cal.3d 179, 183, 113 Cal.Rptr. 89, 520 P.2d 713; *Saunders, supra,* 2 Cal.3d at pp. 1047-1048, 88 Cal.Rptr. 633, 472 P.2d 921.)    Thus, if a habeas corpus petitioner fails to reassert factual allegations in the traverse, stipulate that the petition should serve as a traverse, or except to the sufficiency of the return, "the allegations of the return are deemed admitted, and relief will be denied." (6 Witkin & Epstein, *supra,* § 3377(e), p. 4182;  see *In re Gutierrez* (1934) 1 Cal.App.2d 281, 36 P.2d 712.)

   [19] [20] Second, if the factual allegations in the return are so inadequate that the petitioner cannot answer them, "the petitioner may 'except to the sufficiency' (Pen.Code, § 1484) of the return in his ... traverse, thus raising questions of law in a procedure analogous to demurrer." (*Saunders, supra,* 2 Cal.3d at p. 1048, 88 Cal.Rptr. 633, 472 P.2d 921, see also *In re Collins* (1907) 151 Cal. 340, 90 P. 827; 6 Witkin & Epstein, *supra,* § 3377(d), p. 4182.)   (FN4) Like the rule **\*268** [886 P.2d 1261] requiring the respondent to raise his arguments in the return in timely [9 Cal.4th 478] fashion, however, a petitioner must also timely raise his objections to the return or he will be deemed to have waived them.  (*In re Egan* (1944) 24 Cal.2d 323, 330, 149 P.2d 693 [objections to return, made for first time at evidentiary hearing, were untimely].) (FN5)

   Third, "[although] the traverse may allege additional facts in support of the claim on which an order to show cause has issued, attempts to introduce additional claims or wholly different factual bases for those claims in a traverse do not expand the scope of the proceeding which is limited to the

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

claims which the court initially determined stated a prima facie case for
relief. [Citations.]" (*Clark, supra,* 5 Cal.4th at p. 781, fn. 16, 21
Cal.Rptr.2d 509, 855 P.2d 729.)

[21] [22] "In this relatively uncomplicated manner both factual and legal
issues are joined for review." (*Lewallen, supra,* 23 Cal.3d at p. 278, 152
Cal.Rptr. 528, 590 P.2d 383.)   This process of defining the issues is important
because issues not raised in the pleadings need not be addressed. (*Sixto,
supra,* 48 Cal.3d at p. 1263, fn. 2, 259 Cal.Rptr. 491, 774 P.2d 164.)   When,
after considering the return and the traverse, the court finds material facts in
dispute, it may appoint a referee and order an evidentiary hearing be held.
(See, e.g., *In re Hitchings* (1993) 6 Cal.4th 97, 24 Cal.Rptr.2d 74, 860 P.2d 466
[referee appointed to hold evidentiary hearing on allegations of jury
misconduct]; see also *People v. Pope* (1979) 23 Cal.3d 412, 426, 152 Cal.Rptr.
732, 590 P.2d 859 ["In habeas corpus proceedings, there is an opportunity in an
evidentiary hearing to have trial counsel fully describe his or her reasons for
acting or failing to act in the manner complained of."].)

[23] Conversely, "[w]here there are no disputed factual questions as to
matters outside the trial record, the merits of a habeas corpus petition can be
decided without an evidentiary hearing." (*Karis, supra,* 46 Cal.3d at p. 656,
250 Cal.Rptr. 659, 758 P.2d 1189, citing [9 Cal.4th 479] *Lewallen, supra,* 23
Cal.3d at p. 278, 152 Cal.Rptr. 528, 590 P.2d 383;  see also, *People v. Frierson*
(1979) 25 Cal.3d 142, 160, 158 Cal.Rptr. 281, 599 P.2d 587 ["The pleadings ...
furnish sufficient uncontested information to resolve the issue without resort
to a reference for an evidentiary hearing."].)   Thus, "[w]hen the return
effectively admits the material factual allegations of the petition and traverse
by not disputing them, we may resolve the issue without ordering an evidentiary
hearing." (*Sixto, supra,* 48 Cal.3d at p. 1252, 259 Cal.Rptr. 491, 774 P.2d
164.)

## B. The Proscription Against General Denials in the Return

[24] We have described how the return to an OSC has evolved from its historic
origins and how modern cases have required that the return allege facts that
respond to the factual allegations in the habeas corpus **\*269** [886 P.2d 1262]
petition. As will appear, past decisions confirm that the
practice of filing a return containing only general denials is disapproved.

Previous decisions have explained that filing a return containing general
denials indicates the People's "willingness to rely on the record." (*Lewallen,
supra,* 23 Cal.3d at p. 278, 152 Cal.Rptr. 528, 590 P.2d 383;  see also *Harris,
supra,* 5 Cal.4th at p. 823, fn. 2, 21 Cal.Rptr.2d 373, 855 P.2d 391 [by
effectively admitting the factual allegations in the petition, no evidentiary
hearing is required];  *Sixto, supra,* 48 Cal.3d at p. 1252, 259 Cal.Rptr. 491,
774 P.2d 164 [same].)   Because this rule results in the somewhat confounding
situation of transforming a denial, albeit a general one, into an admission of
sorts, we turn to the evolution of the rule.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

The basic rule was established in *Lewallen, supra,* 23 Cal.3d 274, 152 Cal.Rptr. 528, 590 P.2d 383.   In that case, the petitioner set forth facts in his habeas corpus petition alleging that when the trial court sentenced him, it improperly relied on his rejection of an offered plea bargain and his decision to go to trial.  We issued an OSC, finding the petitioner stated a prima facie case for relief.  The respondent's return, however, "offer[ed] nothing more in support of their claim that petitioner's confinement is lawful than a general denial of his [factual] allegation[s].... By alleging only a conclusionary statement of ultimate fact in their return, the People have indicated a willingness to rely on the record." (*Id.* at p. 278, 152 Cal.Rptr. 528, 590 P.2d 383.)    Accordingly, we found no "disputed factual questions as to matters outside the trial record [and] the merits of petitioner's claim can be reached without ordering an evidentiary hearing." (*Ibid.,* fn. omitted.)

In a footnote following the foregoing passage, we specifically cautioned the respondent regarding the danger of relying on general denials in their return, saying: "We emphasize our disapproval of the practice of setting out in a return to an order to show cause mere general denials of a habeas corpus [9 Cal.4th 480] petition's allegations.  Because the issuance of an order to show cause reflects the issuing court's determination that the petition states facts which, if true, entitle the petitioner to relief [citations], *the respondent should recite the facts upon which the denial of petitioner's allegations is based, and, where appropriate, should provide such documentary evidence, affidavits, or other materials as will enable the court to determine which issues are truly disputed."* (*Lewallen, supra,* 23 Cal.3d at p. 278, fn. 2, 152 Cal.Rptr. 528, 590 P.2d 383, italics added.)

*Sixto, supra,* 48 Cal.3d 1247, 259 Cal.Rptr. 491, 774 P.2d 164, relied on *Lewallen, supra,* in resolving a habeas corpus matter without an evidentiary hearing.  In that case, the petitioner, an illiterate farm worker, was convicted of murder and various sex crimes.  In his habeas corpus petition, he claimed he was denied the effective assistance of counsel in several respects.  We issued an OSC based on three of his allegations, namely:  "the failure to investigate petitioner's blood-alcohol level, the failure to adequately investigate the defense of diminished capacity based on PCP intoxication, and the failure to adequately investigate available evidence of petitioner's good character for the penalty phase." (*Id.* at p. 1251, 259 Cal.Rptr. 491, 774 P.2d 164.)    The respondent filed a return that did not dispute the material facts alleged by the petitioner. (*Ibid.*)  We then applied the rule that the respondent is deemed to have admitted those material factual allegations that they fail to dispute (*id.* at p. 1252, 259 Cal.Rptr. 491, 774 P.2d 164), and thereafter decided we could "resolve the issues joined by the pleadings without an evidentiary hearing." (*Ibid.*)  *Sixto* was cited with approval in *Harris, supra,* 5 Cal.4th at p. 823, 21 Cal.Rptr.2d 373, 855 P.2d 391.  (Cf. *In re Bower* (1985) 38 Cal.3d 865, 873, 215 Cal.Rptr. 267, 700 P.2d 1269 [citing *Lewallen* with approval in case in which People had the burden to rebut presumption of prosecutorial vindictiveness].)

[25] By failing to allege facts demonstrating the lawfulness of the challenged detention, a return containing only general denials is deficient in two

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

important ways. First, such a return fails to fulfill its function of narrowing the facts and issues to those that are truly in dispute. (*Lewallen, supra,* 23 Cal.3d at p. 278, fn. 2, 152 Cal.Rptr. 528, 590 P.2d 383.) This is important because an **\*270** [886 P.2d 1263] appellate court will order an evidentiary hearing and appoint a referee only if it finds material facts are in dispute. ( *Romero, supra,* 8 Cal.4th at pp. 739-740, 35 Cal.Rptr.2d 270, 883 P.2d 388.)

Second, failure to allege facts in the return prevents a habeas corpus petitioner from controverting those facts in his or her traverse. The traverse becomes a useless pleading, unable to assist the court in sharpening the issues that must be decided in a reference hearing. It becomes impossible for an appellate court to determine whether or not to order a reference hearing, and if so, to specify the issues on which the referee should take evidence.

Accordingly, we reiterate our disapproval of the practice of filing returns that merely contain a general denial of a habeas corpus petitioner's factual [9 Cal.4th 481] allegations. This raises the next question we must decide: did respondent's return contain only "general denials"?

### C. Did Respondent's Return Contain Only General Denials?

Respondent contends that, assuming general denials are disapproved, his return was not objectionable on that ground. First, respondent asserts that his return cannot fairly be characterized as containing a general denial because a general denial is a one-sentence denial of all the allegations in a complaint. (See 5 Witkin, Cal.Procedure (3d ed. 1985) Pleading, § 981, p. 409 ["A general denial is a simple, stereotyped form of statement which in one sentence denies all the allegations of the complaint."].) By contrast, he claims, his return admitted 12 of the 16 paragraphs in the habeas corpus petition and denied 4 paragraphs. (See *ante* pp. 263-264 of 37 Cal.Rptr.2d, pp. 1256-1257 of 886 P.2d.) Second, respondent claims he denied those paragraphs in the habeas corpus petition that "involved conclusory statements of law and assertions of untested fact based on the declarations of petitioner and the former investigator who worked on his behalf."

As we observed earlier (see *ante,* at p. 267, fn. 4 of 37 Cal.Rptr.2d, at p. 1260, fn. 4 of 886 P.2d; see also *Romero, supra,* 8 Cal.4th at p. 739, fn. 6, 35 Cal.Rptr.2d 270, 883 P.2d 388), the rules of civil pleading provide an imperfect analogy in this case. For normal civil pleading, a general denial is indeed permissible in many situations. (Code Civ.Proc., § 431.30, subd. (d) ["If the complaint ... is not verified, a general denial is sufficient...."]; see generally 5 Witkin, *supra,* Pleading, § 981, p. 409.) The reason why such denials are disapproved *in the habeas corpus context,* however, is because they fail to serve the purpose of the return, i.e., to help the court identify the disputed factual issues so that it can determine whether a reference hearing is necessary. That respondent's return here did not contain a general denial as that term is defined for civil pleadings is beside the point.

[26] In this case, the 12 paragraphs the People admitted in their return are

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

the standard paragraphs present in all habeas corpus petitions.  Thus, the
People admitted the truth of the defendant's factual allegations concerning the
crimes of which he was convicted, the location of his present confinement, the
absence of any remedy at law, etc.  The four paragraphs that were generally
denied, however, are *the key paragraphs* in the petition that explain the alleged
factual and legal basis for the requested relief.  Although it is true that the
return specifically denied petitioner received ineffective counsel at trial, it
did not indicate *the factual basis* on which the People reach that conclusion.
Such assertions do not assist the appellate court in identifying the material
factual issues actually in dispute.  Accordingly, they may [9 Cal.4th 482]
fairly be characterized as general denials for purposes of habeas corpus
pleading.

[27] Respondent argues the narrowing function of the return was performed by
both the points and authorities accompanying the return, as well as the
respondent's brief in the direct appeal which he sought to incorporate by
reference.  Respondent claims the Court of Appeal should have been able to
discern from these documents what facts he was disputing.  On this point,
respondent stands on firmer ground.  In general, points and authorities state
*legal arguments,* not *facts,* and thus will fail to narrow the factual *271 [886
P.2d 1264] issues that must be determined to resolve the dispute.  In this case,
however, although respondent's points and authorities largely proffered legal
arguments, part 3 of that document stated respondent "denies allegations [in the
petition] based on the declaration of [defendant], who claims never to have
discussed the matter of a mental defense with his attorney.  Such declarations
are 'subjective, self-serving, and, by [themselves], insufficient to satisfy the
*Strickland* test for prejudice.'  [Citations.]"  In addition, a footnote states:
"[Respondent] also dispute[s] the factual allegations of trial counsel's
investigator in this case, Chuck Harrington."   By these assertions, it becomes
clearer respondent disputed the allegations, made by defendant in his habeas
corpus petition, that defendant discussed a diminished capacity defense with his
trial attorney, and that the attorney directed Harrington not to investigate
that issue.  If this portion of the points and authorities can be deemed a part
of the return, then the lower court erred in concluding respondent failed to
dispute any material factual allegations in his return.

[28] [29] As a technical matter, it is arguable that factual allegations made
in the memorandum of points and authorities, but not in the return itself, were
not properly incorporated into the return.  The goal, however, of the procedures
that govern habeas corpus is to provide a framework in which a court can
discover the truth and do justice in timely fashion.  Accordingly, we should not
construe the pleadings in such a parsimonious fashion.  Moreover, for such
technical irregularities in the pleadings in a habeas corpus proceeding, a court
issuing an OSC retains the discretion to grant a party leave to amend.  (Cf.
Code Civ.Proc., § 576 ["Any judge, at any time before or after commencement of
trial, in the furtherance of justice, and upon such terms as may be proper, may
allow the amendment of any pleading...."].)  Retention of this power is
necessary to ensure that technical and inadvertent pleading errors do not lead
to premature dismissals that would frustrate the ends of justice or require

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

holding unnecessary evidentiary hearings that would squander scarce judicial resources. If the lower court, having read the [9 Cal.4th 483] return and the accompanying memorandum of points and authorities, entertained a doubt about whether respondent stated adequate facts to demonstrate he was contesting the truth of petitioner's factual allegations, it could have granted leave to amend the return. (FN6)

Although we conclude that portions of respondent's memorandum of points and authorities were sufficient to place the lower court on notice regarding those facts in dispute, respondent nevertheless fails affirmatively to state facts that contradict the factual allegations in the petition for habeas corpus. In other words, although respondent stated he denied the truth of defendant's declarations, he stated no facts that would justify holding an evidentiary hearing. Respondent contends that he should not be required to set forth such facts. We therefore next address the nature of respondent's burden of pleading in the return.

### D. The Nature of the People's Burden

[30] Respondent first contends the Court of Appeal erred by requiring him, in his return, to carry the burden of disproving the petitioner's factual allegations. Assuming that the lower court's opinion can be so construed, we agree it erred. The People need not *prove* the habeas corpus petitioner's factual allegations are wrong; if an evidentiary hearing is held, it is the petitioner who bears the burden of proof. At this *pleading* stage, however, the general rule has been that respondent **272** [886 P.2d 1265] must either admit the factual allegations set forth in the habeas corpus petition, or *allege additional facts* that *contradict* those allegations. If a dispute arises regarding material facts, the appellate court will then appoint a referee to determine the true facts at a hearing in which the petitioner will have the burden of proof. At this early stage, however, the People's burden is one of pleading, not proof. (FN7)

Respondent declares that the fact pleading burden we reiterate today is one that, as a practical matter, may be impossible to meet in this case. He [9 Cal.4th 484] emphasizes that trial counsel is dead and is thus unavailable to confirm or deny the existence of past conversations with counsel that defendant alleges took place. Although respondent strongly suspects that defendant's factual allegations are untrue, he therefore has no facts presently at his disposal that can be alleged in the return to contradict those allegations. Thus, respondent asserts that a strict adherence to the rule requiring him to plead facts in the return poses a procedural dilemma: the People cannot obtain a hearing in which they can cross-examine defendant and his declarants without stating facts in the return, but they cannot obtain those facts without an evidentiary hearing.

This dilemma illustrates how the prior rule, as announced in *Saunders, supra,* 2 Cal.3d at p. 1047, 88 Cal.Rptr. 633, 472 P.2d 921; *Lawler, supra,* 23 Cal.3d at p. 194, 151 Cal.Rptr. 833, 588 P.2d 1257; and *Sixto, supra,* 48 Cal.3d at p.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

1252, 259 Cal.Rptr. 491, 774 P.2d 164, requiring respondent to plead facts, in his return, that are responsive to the petition, may be inadequate in cases in which the respondent has no easy or reasonable access to the facts, such as some claims alleging ineffective assistance of trial counsel and/or claims that hinge on the credibility of witnesses.  In our experience, such attorney incompetence claims are now made almost routinely to attack alleged trial errors, no doubt at least partly due to our admonition in 1979 that "[w]here the [trial] record does not illuminate the basis for the challenged acts or omissions, a claim of ineffective assistance [of counsel] is more appropriately made in a petition for habeas corpus."  (*People v. Pope, supra,* 23 Cal.3d at p. 426, 152 Cal.Rptr. 732, 590 P.2d 859.)

Moreover, experience shows that it is not unusual for trial counsel to refuse to speak with the respondent when his or her competence is called into question. In such cases, one side to the dispute may have sole and exclusive access to the one source of information that is critical to the fair and proper resolution of the dispute.  In such circumstances, it is unreasonable to expect respondent to obtain and plead such facts, on pain of what is essentially a default judgment.

We thus acknowledge the possibility that a habeas corpus petition could contain factual allegations that, under the circumstances of a particular case, would be difficult or impossible for the respondent to contradict with contrary factual allegations prior to an evidentiary hearing.  If, for example, conversations are alleged to have been held in private between defense counsel and his or her client, it may be impossible to obtain and allege facts to refute the allegation, especially if counsel refuses to speak to respondent or, as here, counsel has died.  In such a situation, key facts are in the sole possession of the habeas corpus petitioner.  Nevertheless, respondent may harbor an honest and reasonable belief that a particular factual allegation is untrue.

[9 Cal.4th 485] In addition, proper resolution of a habeas corpus claim may hinge on the credibility of a witness.  For example, in this case, the most important factual allegations in defendant's habeas corpus petition were that his trial attorney was aware that defendant was intoxicated at the time of the crime, and that counsel never discussed the matter with him.  [886 P.2d 1266] As the attorney has died, defendant is probably the only witness who can confirm these facts.  Nevertheless, he must prove them before he will be entitled to relief, and such proof will necessarily entail an assessment of **\*273** his personal credibility.  It seems manifest that other than flatly denying the truth of these factual allegations, respondent will not be able to allege facts tending to show defendant is not credible.

[31] In a similar vein, declarations by experts presented by a habeas corpus petitioner need not be met with counter declarations by experts solicited by respondent.  Instead, it is sufficient for the respondent to inform the court it intends to dispute the credibility of the petitioner's expert.  We reiterate that the respondent bears the burden of *pleading* facts, not *proving* them at this early stage in the proceedings.  Respondent remains free, of course, to present his own expert evidence at any ensuing evidentiary hearing in an attempt to

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

discredit or undermine the evidence of the petitioner's expert evidence.

[32] [33]  In such cases (which, as suggested above, will often involve allegations of ineffective assistance of counsel), where access to critical information is limited or denied to one party, where it is unreasonable to expect a party to obtain information at the pleading stage, or where the proper resolution of a case hinges on the credibility of witnesses, the general rule requiring the pleading of facts should not be enforced in such a draconian fashion so as to defeat the ends of justice.  When one party (respondent for the return, petitioner for the traverse) can allege:  (i) he or she has acted with due diligence;  (ii) crucial information is not readily available;  and (iii) that there is good reason to dispute certain alleged facts or question the credibility of certain declarants, courts evaluating the return and traverse should endeavor to determine whether there are facts legitimately in dispute that may require holding an evidentiary hearing.

[34]  To assist the court in making that determination, the return should set forth with specificity:  (i) why information is not readily available;  (ii) the steps that were taken to try to obtain it;  and (iii) why a party believes in good faith that certain alleged facts are untrue.  For example, in this case, because counsel is deceased, respondent has demonstrated the impossibility of obtaining facts to counter the petitioner's allegations that he had certain conversations with his defense counsel.  Had counsel been alive, respondent [9 Cal.4th 486] could have satisfied his burden by alleging that he had an investigator contact counsel and that counsel refused to speak with the investigator.  Respondent could then identify what facts he is disputing, thereby assisting the court in determining whether there are material facts in dispute to justify an evidentiary hearing.  By pleading such facts, the return will fulfill its historical role of helping to narrow the contested issues for the court while holding respondent to his statutory burden of pleading.  (FN8)

[35]  Applying that rule here, we find that, although the return may be technically deficient, its contents, coupled with the memorandum of points and authorities, demonstrate respondent has identified the facts he wishes to dispute, namely, the truthfulness and credibility of both petitioner and Harrington.  Moreover, given counsel's death and respondent's arguments before this court, it appears the critical information is possessed by petitioner and is not reasonably available to respondent.  Under these circumstances, applying a clarified rule requiring respondent to plead facts in the return only if reasonably available, we find that the Court of Appeal should have appointed a referee to hold an evidentiary hearing to determine the truth or falsity of petitioner's and Harrington's factual allegations regarding counsel's failure to investigate and present a defense based on petitioner's alleged diminished mental state.

## CONCLUSION

The judgment of the Court of Appeal is vacated and the matter remanded to that
*274   court with directions to appoint a referee and order an evidentiary

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

hearing in this case.

   MOSK, KENNARD and BAXTER, JJ., concur.

   ARABIAN, Justice, concurring and dissenting.

   I concur in vacating the judgment of the Court of Appeal.  The return alleged facts establishing the legality of defendant's custody, i.e., the presumptively valid conviction of murder and sentence to state prison for 17 years to life. It admitted some of the allegations of the petition, denied others, and identified the specific factual allegations that are in dispute.  As the majority ultimately holds, this was sufficient to warrant an evidentiary hearing.  I join in that holding.

   I write separately to disassociate myself from the tortuous detour the majority takes from this straightforward path before finally arriving at the [9 Cal.4th 487] correct destination.  Claiming to "clarif[y]" matters (maj. opn., *ante*, at p. 262 of 37 Cal.Rptr.2d, at p. 1255 of 886 P.2d), the majority, in dicta, declares unprecedented rules, creates exceptions for those new rules, invents rules for those exceptions to the new rules, and then, rather than enforce them, simply abandons them all in favor of a commonsense result that is consistent with prior decisions.  Heretofore, factual and legal issues have been joined in a "relatively uncomplicated" manner.  (*In re Lewallen* (1979) 23 Cal.3d 274, 278, 152 Cal.Rptr. 528, 590 P.2d 383.)   It should remain so.

I.

   In response to the order to show cause (OSC), the Attorney General filed a 15-page document entitled "Return to order to show cause and memorandum of points and authorities in support of return."   It incorporated by reference the respondent's brief in the direct appeal which, since this proceeding and the appeal have been consolidated and both raise the same claim of ineffective assistance of counsel, was certainly appropriate.  It affirmatively alleged the judgment of this case, admitted the allegations of 12 paragraphs of the petition, and denied the allegations of 4 paragraphs.  In addition, it contained a two-page section captioned in bold print:  "In the event this court concludes that the petition cannot be rejected as a matter of law, the matter should be remanded to the trial court for an evidentiary hearing on disputed factual issues relating to deficient attorney performance and prejudice."   The facts in dispute were clearly identified.  Respondent specifically denied "allegations based on the declaration of [defendant], who claims never to have discussed the matter of a mental defense with his attorney," and specifically disputed the factual allegations of the investigator and the opinions of the defense expert.

   Contrary to the majority's assertion, this was not a mere "general denial" under any definition of the term.  In an uncomplicated manner, the respondent clearly set forth the factual dispute.  Assuming arguendo that defendant has stated a prima facie case for relief, an issue that is not before us on review and upon which I express no opinion (see *People v. Romero* (1994) 8 Cal.4th 728,

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

745, fn. 12, 35 Cal.Rptr.2d 270, 883 P.2d 388), respondent has both alleged facts justifying defendant's custody (the judgment) and, by specifically denying the legal *and factual* basis for the claims, responded to the allegations of the petition sufficiently to warrant an evidentiary hearing on the disputed factual allegations. The majority correctly so holds.

## II.

Before reaching this holding, however, the majority meanders considerably. It departs substantially from the existing requirements [886 P.2d 1268] that the return [9 Cal.4th 488]  "must allege facts establishing the legality of the petitioner's custody" and "must be responsive to" the grounds for the claimed illegality. (*People v. Romero, supra*, 8 Cal.4th at p. 738, 35 Cal.Rptr.2d 270, 883 P.2d 388.)

The majority asserts:  "Those facts are not simply the existence of a judgment of conviction and sentence when the petitioner challenges his restraint in prison.  The factual allegations of a return must also respond to the allegations of the petition that form the basis of the petitioner's claim that the confinement is unlawful. (*Romero, supra*, 8 Cal.4th at p. 738 [35 Cal.Rptr.2d 270, 883 **\*275** P.2d 388]; *People v. Pacini* (1981) 120 Cal.App.3d 877, 884 [174 Cal.Rptr. 820].)"  (Maj. opn., *ante*, at p. 267 of 37 Cal.Rptr.2d, at p. 1260 of 886 P.2d.)   To the extent this language implies there must be an affirmative factual recitation beyond alleging the judgment and denying specific factual allegations of the petition, nothing in the cases the majority cites (see, e.g., the language from *People v. Romero, supra*, 8 Cal.4th at p. 738, 35 Cal.Rptr.2d 270, 883 P.2d 388, quoted in the previous paragraph), or anywhere else, supports this statement.

Rather than applying the "prior rule" (maj. opn., *ante,* at p. 272 of 37 Cal.Rptr.2d, at p. 1265 of 886 P.2d), the majority invents new ones.  From the language of *People v. Romero, supra,* 8 Cal.4th at p. 738, 35 Cal.Rptr.2d 270, 883 P.2d 388, the majority divines the rule quoted in the previous paragraph and, worse yet, suggests--without claiming there is supporting authority or attempting to state a rational basis--that the return must "affirmatively ... state facts that contradict the factual allegations in the petition," or state "facts that would justify holding an evidentiary hearing," or "*allege additional facts* that *contradict* those allegations." (Maj. opn., *ante*, at p. 271 of 37 Cal.Rptr.2d, at p. 1265 of 886 P.2d, italics in original.)   Neither law nor logic supports these requirements, which is undoubtedly why the majority is compelled to create exceptions to these new rules (maj. opn., *ante*, at pp. 272-273 of 37 Cal.Rptr.2d, at pp. 1265-1266 of 886 P.2d), invent rules for the exceptions (*id.* at p. 273 of 37 Cal.Rptr.2d, at p. 1266 of 886 P.2d), and ultimately abandon them all in its actual holding (thus making the discourse mere dicta).  (*Id.* at p. 273 of 37 Cal.Rptr.2d, at p. 1266 of 886 P.2d.)

The majority claims that "[p]revious decisions have explained that filing a return containing general denials indicates the People's 'willingness to rely on the record,' " and cites in support *In re Lewallen, supra*, 23 Cal.3d at p. 278,

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

152 Cal.Rptr. 528, 590 P.2d 383;  *In re Harris* (1993) 5 Cal.4th 813, 823, fn. 2,
21 Cal.Rptr.2d 373, 855 P.2d 391;  and *In re Sixto* (1989) 48 Cal.3d 1247, 1252,
259 Cal.Rptr. 491, 774 P.2d 164.  (Maj. opn., *ante*, at p. 268 of 37 Cal.Rptr.2d,
at p. 1261 of 886 P.2d.)   It concedes that "this rule results in the somewhat
confounding situation of transforming a denial, albeit a general one, into an
admission of sorts...."  (*Id.* at pp. 268-269 of 37 Cal.Rptr.2d, at pp. 1261-1262
of 886 P.2d.)  "Confounding" that would certainly be, but it has never been the
rule, as an examination of the three cited cases shows.  In fact, only the dicta
is confounding.

    In *In re Harris, supra,* 5 Cal.4th 813, 21 Cal.Rptr.2d 373, 855 P.2d 391, the
petition alleged that the crimes for which the petitioner was convicted were
committed the day before his [9 Cal.4th 489] 16th birthday, and therefore he was
improperly tried as an adult.  The return did not deny that the crimes were
committed on that date, but made legal arguments why the petitioner was
nonetheless not entitled to relief.  Because no facts were disputed, only the
legal significance of those facts, obviously we were able to " 'resolve the
issue without ordering an evidentiary hearing.' "  (*Id.* at p. 823, fn. 2, 21
Cal.Rptr.2d 373, 855 P.2d 391.)   In *In re Sixto, supra,* 48 Cal.3d at p. 1252,
259 Cal.Rptr. 491, 774 P.2d 164, the return did not "dispute [ ] petitioner's
material factual allegations," and so we likewise were able to "resolve the
issues joined by the pleadings without an evidentiary hearing."   These results
are unremarkable, and do not "transform[ ] a denial ... into an admission...."
(Maj. opn., *ante*, at p. 269 of 37 Cal.Rptr.2d, at p. 1262 of 886 P.2d.)

    [886 P.2d 1269] The majority relies most heavily on *In re Lewallen, supra,* 23
Cal.3d 274, 152 Cal.Rptr. 528, 590 P.2d 383.   There, the defendant claimed that
the trial court had relied on "improper considerations" at sentencing.  (*Id.* at
p. 277, 152 Cal.Rptr. 528, 590 P.2d 383.)   In their return, "the People
offer[ed] nothing more in support of their claim that petitioner's confinement
is lawful than a general denial of his allegation that the judge improperly
considered his election to stand trial rather than to accept the proffered plea
bargain."  (*Id.* at p. 278, 152 Cal.Rptr. 528, 590 P.2d 383.)   (FN1)  We said
that "[b]y alleging  *276  only a conclusory statement of ultimate fact in
their return, the People have indicated a willingness to rely on the record....
There being no disputed factual questions as to matters outside the trial
record, the merits of petitioner's claim can be reached without ordering an
evidentiary hearing."  (*Ibid.*)  We went on to decide whether what the trial
court did at sentencing was improper, and concluded it was.

    This, too, is unremarkable, and not in the least confounding.  There was no
dispute as to what the trial court did, only whether it was improper.  The
People were willing to rely on the trial record, which included, no doubt, a
transcript of the sentencing hearing, and to argue whether that record showed an
impropriety.  Since the record established the historical facts, no evidentiary
hearing was needed.  The only disputed issue was the legal significance of those
facts.

    As the majority notes, in *In re Lewallen, supra,* 23 Cal.3d at p. 278, fn. 2,

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

152 Cal.Rptr. 528, 590 P.2d 383, we also "emphasize[d] our disapproval of the
practice of setting out in a return to an order to show cause mere general
denials of a habeas corpus petition's allegations.... [T]he respondent should
recite the facts upon which the denial of petitioner's allegations is based,
and, where [9 Cal.4th 490] appropriate, should provide such documentary
evidence, affidavits, or other materials as will enable the court to determine
which issues are truly disputed."   I agree.  The return and traverse must play
a narrowing function, and identify the specific factual matters that are in
dispute and may require resolution through an evidentiary hearing.  Once an OSC
has issued, we expect the People to conduct a reasonable investigation of the
allegations of the petition that have resulted in the OSC, and to frame the
return in light of the results of that investigation.  (See *People v. Romero,
supra,* 8 Cal.4th at p. 745, fn. 11, 35 Cal.Rptr.2d 270, 883 P.2d 388.)   If the
People, after an investigation, do not, in good faith, contest a particular
factual allegation, the return should make that clear so that an evidentiary
hearing will not be needed on that fact.  The return should also provide
documentary evidence where appropriate.  If a document exists that shows a court
or other tribunal performed certain acts, that document should be provided.  If
a transcript can eliminate any factual questions, it should similarly be
provided.  Declarations of defense counsel explaining what was and was not done,
and why, if available, are encouraged.  Additionally, the return should
specifically state what factual allegations are disputed, as was done here.

   But what "should" be done "where appropriate" must not be encrusted into
illogical and unprecedented procedural requirements--with a procedural default
(or the need to seek and obtain leave to amend the return) the penalty for
noncompliance.  Nor should this court be compelled, as a result, to create
exceptions and more rules for those exceptions to try to make the system
workable and reasonably just.  We have never suggested a denial is an admission,
or that denying specific facts evinces a willingness to rely on the record.

   [886 P.2d 1270] The majority correctly recognizes that because a judgment is
presumed valid, the person challenging its validity bears the burden of proof.
(Maj. opn., *ante,* at p. 265 of 37 Cal.Rptr.2d, at p. 1258 of 886 P.2d) "The
initial burden of proving guilt beyond a reasonable doubt is on the prosecution,
and the panoply of rights accorded an accused person prior to his conviction
supports the presumption that he is innocent.  Different considerations apply,
however, to collateral review of a final criminal judgment.  For purposes of
collateral attack, all presumptions favor the truth, accuracy, and fairness of
the conviction and sentence; *defendant* thus must undertake the burden of
overturning them.  Society's interest in the finality of criminal proceedings so
demands, and due process is not thereby offended.  [Citations.]." (*People v.
Gonzalez* (1990) 51 Cal.3d 1179, 1260, 275 Cal.Rptr. 729, 800 P.2d 1159, italics
in original.)   **\*277.**  The People may therefore deny the disputed facts, as they
have done in this case, and force defendant to prove them at an evidentiary
hearing where the witnesses' credibility can be tested by cross-examination.  At
such a hearing, [9 Cal.4th 491] the People will have the opportunity, but not
the obligation, to present their own evidence, including experts.  They need not
prove the judgment valid.

            © 2005 Thomson/West. No claim to original U.S. Govt. works.

The majority nevertheless purports to impose a *pleading* requirement even though there is no *proof* requirement.  Even the majority recognizes this is "anomalous."  (Maj. opn., *ante*, at p. 272, fn. 7 of 37 Cal.Rptr.2d, at p. 1265, fn. 7 of 886 P.2d.)    It is not only anomalous, it is unprecedented in the entire realm of the law to require facts be pled that need never be proven.  The majority asserts that this "awkward procedural mechanism is required, however, to assist the court in determining which material facts, if any, are in dispute."  (*Ibid*.)  It states that "failure to allege facts in the return prevents a habeas corpus petitioner from controverting those facts in his or her traverse.  The traverse becomes a useless pleading, unable to assist the court in sharpening the issues that must be decided in a reference hearing.  It becomes impossible for an appellate court to determine whether or not to order a reference hearing, and if so, to specify the issues on which the referee should take evidence."  (*Id*. at p. 269 of 37 Cal.Rptr.2d, at p. 1262 of 886 P.2d.)

As this case illustrates, however, there is no such uselessness or impossibility under the existing uncomplicated law, and no need for new anomalous rules.  The return here disputed specific factual allegations, the traverse reasserted those allegations, the issues were thus joined.  The court can readily determine which material facts are in dispute.

The majority's detour of dicta is unnecessary as well as unsupported by logic or authority.  I am confident that after some initial confusion and consternation, future courts will simply follow the majority's example, and consign it to a well-deserved oblivion.

### III.

Because the majority ultimately finds the return sufficient to warrant an evidentiary hearing even though it was "technically deficient" (maj. opn., *ante*, at p. 273 of 37 Cal.Rptr.2d, at p. 1266 of 886 P.2d), I largely join in its holding.  But it is too restrictive.  Without explanation, the majority directs the Court of Appeal to appoint a referee and order an evidentiary hearing.  That is one way to resolve the factual dispute, but not the only way.  The OSC might be made returnable before the superior court, "a court designed for the trial of issues of fact...."  (*In re Hochberg* (1970) 2 Cal.3d 870, 874, 87 Cal.Rptr. 681, 471 P.2d 1.)  This would have the additional advantage that the matter could be assigned to the trial judge.  "[T]here is no judge better suited for making a determination of the issues raised in petitioner's petition than the original trial judge."  (*Yokley v. Superior Court* (1980) 108 Cal.App.3d 622, 628, 166 Cal.Rptr. 657.)

The Court of Appeal here did not originally make the OSC returnable in the superior [886 P.2d 1271] court, but there is no reason it should be prohibited from [9 Cal.4th 492] amending it should it so choose.  The holding today does not prohibit future appellate courts from relying on the superior court to find the facts, rather than a referee, so little damage is done beyond this case. But I would merely vacate the judgment of the Court of Appeal and remand the matter without the restrictive language.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)      Page 32

GEORGE and STEVEN J. STONE (FN*), JJ., concur.

(FN1.) Subsequent statutory references are to this code unless otherwise stated.

(FN2.) Section 1480 states:  "The person upon whom the writ is served must state in his return, plainly and unequivocally:

"1. Whether he has or has not the party in his custody, or under his power or restraint;

"2. If he has the party in his custody or power, or under his restraint, he must state the authority and cause of such imprisonment or restraint;

"3. If the party is detained by virtue of any writ, warrant or other written authority, a copy thereof must be annexed to the return, and the original produced and exhibited to the Court or Judge on the hearing of such return;

"4. If the person upon whom the writ is served had the party in his power or custody, or under his restraint, at any time prior or subsequent to the date of the writ of habeas corpus, but has transferred such custody or restraint to another, the return must state particularly to whom, at what time and place, for what cause, and by what authority such transfer took place;

"5. The return must be signed by the person making the same, and, except when such person is a sworn public officer, and makes such return in his official capacity, it must be verified by his oath."

*277_   (FN3.) We emphasize the People's burden at this point is one of pleading, not proof.  A habeas corpus petitioner who seeks to overturn a presumptively valid criminal judgment in a collateral attack retains the heavy burden *to prove* the facts that he or she claims justify relief.  At this early pleading stage, however, we have required the People to set forth, in their return, facts responsive to the factual allegations in the original petition for a writ of habeas corpus.

(FN4.) Several prior cases have observed that the procedure of filing a return and traverse is analogous to pleadings in civil matters.  (See *Sixto, supra,* 48 Cal.3d at p. 1252, 259 Cal.Rptr. 491, 774 P.2d 164 [the return "is thus analogous to the complaint in civil actions"];  *Lawler, supra,* 23 Cal.3d at p. 194, 151 Cal.Rptr. 833, 588 P.2d 1257 [same];  *Saunders, supra,* 2 Cal.3d at p. 1047, 88 Cal.Rptr. 633, 472 P.2d 921 [traverse is analogous to answer in civil action];  *In re Masching, supra,* 41 Cal.2d at p. 533, 261 P.2d 251 ["the return is to be considered as a complaint and the petition [stipulated as the traverse] as an answer"];  *In re Collins, supra,* 151 Cal. at p. 343, 90 P. 827 ["To adopt the analogy of pleadings in civil actions, the return is the complaint, the traverse is the answer."].)  As explained in *Romero, supra,* 8 Cal.4th at p. 739, fn. 6, 35 Cal.Rptr.2d 270, 883 P.2d 388, the civil analogy is not completely apt, and we will not engraft on habeas corpus procedures the

© 2005 Thomson/West. No claim to original U.S. Govt. works.

myriad rules and technicalities applicable to civil pleadings.  We nevertheless reiterate the centrality of the return in this process and the requirement that the return state facts and respond to the factual allegations set forth in the petition.

(FN5.) Although the procedure is mentioned in some published cases, in section 1484, and by some commentators, we have found no reported case ruling on the merits of an exception to the sufficiency of a return to a habeas corpus petition.  The absence of a published opinion dealing with this procedure in depth is likely due to the fact that appellate courts usually decide such motions without an opinion.  Evidence of such action is thus found in the minutes of the court.  (See, e.g., *In re Stanley Williams on Habeas Corpus,* Supreme Ct. Mins., May 23 1990 [order sustaining habeas corpus petitioner's exceptions to the sufficiency of the return]; *In re Hitchings on Habeas Corpus,* Supreme Ct.Mins., Feb. 15, 1990 [same].)

(FN6.) In cases in which an OSC has issued, we strongly encourage the People to produce a return that "stands alone," that is, a document that has the critical factual allegations contained within its four corners.  As this case demonstrates, incorporating other documents by reference can obscure those factual allegations on which the People rely.  We reiterate that the purpose of the return is to assist the court that issued the OSC in determining what material facts are truly disputed by the parties.  Because we find sufficient indication in the points and authorities that respondent intended to dispute the petitioner's factual allegations concerning his conversations with counsel, as well as Harrington's allegations, we do not address whether the respondent's brief from the direct appeal was properly incorporated by reference into the return.

(FN7.) We realize it is anomalous to require the People to plead facts when they will not be required to prove those facts, inasmuch as the burden of proof must be borne by the petitioner.  This awkward procedural mechanism is required, however, to assist the court in determining which material facts, if any, are in dispute.

(FN8.) We emphasize this modification of the *Saunders-Lawler- Sixto* rule, requiring the respondent to plead facts in his return, does not relieve the petitioner, in his or her petition for a writ of habeas corpus, from alleging facts that, if true, would entitle the petitioner to relief.  Because the petitioner seeks to attack a final judgment that the law presumes is valid, we still require the petitioner to allege facts that would justify relief.

(FN1.) The majority alters this sentence by adding the bracketed word "[factual]" and changing the word "allegation" from the singular to the plural.  (Maj. opn., *ante*, at p. 269 of 37 Cal.Rptr.2d, at p. 1262 of 886 P.2d.)  The word "factual" is simply not there.  Although the People denied the ultimate (and single) fact that the judge acted improperly, there is no hint the People denied any historical facts rather than their legal significance.  Making these critical changes to the quoted language

© 2005 Thomson/West. No claim to original U.S. Govt. works.

37 Cal.Rptr.2d 259, 9 Cal.4th 464, People v. Duvall, (Cal. 1995)

illustrates how far the majority is willing to go, and must go, to claim
support for its dicta.

*277_  (FN*) Hon. Steven J. Stone, Presiding Justice, Court of Appeal, Second
District, Division 6, assigned by the Acting Chairperson of the Judicial
Council.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

.2 envelopes, 1 OF 1

# ParT. 1

CONT.



UNITED STATES POSTAGE
$ 04.60°
02 1A
0004397458
MAILED FROM ZIP CODE 93960
MAY 07 2008



Ricky R. Hurtle · 488858
Salinas Valley State prison
C-1 , 209L
PO Box 1050
Soledad, California
93960-1050.

STATE PR
GENERATED

RECEIVED

MAY  8 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
450 GOLDEN GATE AVENUE
SAN FRANCISCO, CALIFORNIA
94102.